Noam **DANENBERG**, Petitioner,

v.

**FITRACKS, INC.,** Respondent.

C.A. No. 6454–VCL.

Court of Chancery of Delaware.

Submitted: Feb. 27, 2012.

Decided: March 5, 2012.

**994**

Edmond D. Johnson, Bradley W. Voss, Pepper Hamilton LLP, Wilmington, Delaware; Attorneys for Petitioner.

William E. Manning, James D. Taylor, Jr., Saul Ewing LLP, Wilmington, Delaware; Michael S. Gugig, Saul Ewing LLP, Newark, New Jersey; Attorneys for Respondent.

### OPINION

LASTER, Vice Chancellor.

The parties dispute the amount that defendant Fitracks, Inc. must advance to Noam Danenberg in connection with his defense of claims asserted against him by Aetrex Worldwide, Inc., Fitracks' parent, in litigation pending before the United States District Court for the District of Delaware (the "Underlying Action"). They also dispute the amount that Fitracks must pay Danenberg as indemnification for this proceeding. I award Danenberg $292,019.91 in advancements and $276,332.13 in indemnification.

## I. FACTUAL BACKGROUND

The factual background to this dispute is set forth in this Court's memorandum opinion dated January 3, 2012. *See Danenberg v. Fitracks, Inc.*, 2012 WL 11220 (Del.Ch. Jan. 3, 2012) (the "Summary

Judgment Opinion"). In that decision, I held that Fitracks must advance the fees and expenses Danenberg has incurred and is incurring in defending the Underlying Action. I also held that Fitracks must indemnify Danenberg for the fees and expenses he incurred in this proceeding.

The Summary Judgment Opinion determined only liability for advancements and indemnification; it did not fix the amounts due. I asked the parties to "confer regarding the fees and expenses that Danenberg has incurred to date and present any dispute promptly for the Court to resolve." *Id.* at *7. After failing to reach agreement, Danenberg applied for a specific award of fees and expenses.

## II. LEGAL ANALYSIS

[redacted] A party making a fee application bears the burden of justifying the amounts sought. *Citadel Hldg. Corp. v. Roven,* 603 A.2d 818, 823–24 (Del.1992). The application must include "a good faith estimate" of the fees and expenses that the party contends should be approved. *Fasciana v. Elec. Data Sys. Corp.,* 829 A.2d 160, 177 (Del.Ch.2003). Additionally,

> [i]n every case in which an application to the Court is made for a fee or for reimbursement for expenses or services the Court shall require the applicant to make an affidavit or submit a letter, as the Court may direct, itemizing (1) the amount which has been received, or will be received, for that purpose from any source, and (2) the expenses incurred and services rendered, before making such an allowance.

Ct. Ch. R. 88. The Court of Chancery has discretion in determining the level of submissions required. *See Cohen v. Cohen,* 269 A.2d 205, 207 (Del.1970) (affirming Court of Chancery's award of counsel fees for multiple matters without requiring specification by individual controversy).

Danenberg's initial submission did not provide adequate detail for me to rule. Danenberg provided an affidavit of counsel attaching the bills Danenberg has paid, but the statements did not identify the attorneys' hourly rates or the value of particular time entries. Fitracks' opposition was sparser. It identified only the total amounts billed without any supporting documentation. I directed Danenberg to provide more detailed statements that would identify for each entry the date, timekeeper's name, hourly rate, services performed, and the amount billed. I informed Fitracks that I would not consider the amounts it incurred when evaluating reasonableness without a comparable submission. Both parties supplemented the record on February 27, 2012.

### A. The Reasonableness Standard

[redacted] This Court has discretion when determining a reasonable fee award. *Mahani v. EDIX Media Gp., Inc.,* 935 A.2d 242, 245 (Del.2007). In *Mahani,* the Delaware Supreme Court held that "[t]o assess a fee's reasonableness, case law directs a judge to consider the factors set forth in the Delaware Lawyers' Rules of Professional Conduct...." *Id.* at 245–46 (footnote omitted). The factors are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

Del. Lawyers' Rules of Prof'l Conduct R. 1.5(a). The *Mahani* decision also instructed trial courts to consider "whether the number of hours devoted to litigation was excessive, redundant, duplicative or otherwise unnecessary." *Mahani*, 935 A.2d at 247–48 (internal quotation marks omitted).

 *Mahani* and other decisions have applied the Rule 1.5(a) factors to determine a reasonable fee under a contractual fee-shifting provision.[1] When a corporation agrees to make mandatory the permissive authority to provide advancement and indemnification conferred by Sections 145(a), (b), and (e) of the General Corporation Law, the corporation confers a contractual fee-shifting right on the covered person. *See Stifel Fin. Corp. v. Cochran*, 809 A.2d 555, 559 (Del.2002) ("'[I]ndemnification is a right conferred by contract, under statutory auspice . . . .'"); *Citadel*, 603 A.2d at 821 (ruling on "the contract claim" for advancements "emanat[ing] from both the [Indemnity] Agreement and Citadel's Bylaws"). This Court appropriately has used the Rule 1.5(a) factors when evaluating the reasonableness of an advancement request. *See Tafeen v. Homestore, Inc.*, 2005 WL 789065, at *2 (Del.Ch. Mar. 29, 2005), *aff'd*, 888 A.2d 204 (Del. 2005). The Rule 1.5(a) factors also have been used when evaluating the reasonableness of fee requests in other contexts.[2]

---

1. *See Mahani*, 935 A.2d at 244 (affirming use of Rule 1.5(a) factors to determine reasonable fee award under confidentiality agreement in which party agreed "to indemnify and hold harmless Corporation . . . from any and all loss, damage, expense or cost (including attorneys fees and disbursements attendant thereto) arising out of or in any way connected with the enforcement of this Agreement"); *Global Link Logistics, Inc. v. Olympus Growth Fund III, L.P.*, 2010 WL 692752, at *1–2 (Del. Ch. Feb. 24, 2010) (using Rule 1.5(a) factors to determine reasonable fee award under provision in Stock Purchase Agreement that shifted "reasonable costs and expenses" incurred enforcing the agreement); *Concord Steel, Inc. v. Wilm. Steel Processing Co.*, 2010 WL 571934, at *1 n. 2, *3 (Del.Ch. Feb. 5, 2010) (using Rule 1.5(a) factors to determine reasonable fee award under provision in Asset Purchase Agreement that required breaching party to indemnify non-breaching party for "Losses," defined to include "costs and expenses of whatever kind or nature (including reasonable attorneys' fees)"); *Ivize of Milwaukee v. Compex Litig. Support*, 2009 WL 1930178, at *1 (Del.Ch. June 24, 2009) (using Rule 1.5(a) factors to determine reasonable fee under Asset Purchase Agreement which provided that "[i]n the event of any litigation among the parties arising out of [the APA], each Prevailing Party (if any) shall be entitled to reasonable attorneys' fees and *costs* associated with such litigation from its opposing party" (alterations in original)); *Weichert Co. of Pa. v. Young*, 2008 WL 1914309, at *1–2 (Del.Ch. May 1, 2008) (applying Rule 1.5(a) factors to award reasonable fees under employment agreement providing that if "a judgment is entered in [Weichert's] favor, then [Young] shall reimburse [Weichert] for the amount of [Weichert's] expenses, including reasonable attorney's fees, incurred in pursuing and obtaining judgment" (alterations in original)).

2. *See, e.g., Beard Research, Inc. v. Kates*, 2009 WL 3206416, at *3 (Del.Ch. Oct. 1, 2009) (using Rule 1.5(a) factors to award reasonable fee as a sanction for spoliation); *Parfi Hldg. AB v. Mirror Image Internet, Inc.*, 954 A.2d 911, 943–44 & n. 126 (Del.Ch.2008) (using Rule 1.5(a) factors to award reasonable fee as a discovery sanction); *In re SS & C Techs., Inc.*, 2008 WL 3271242, at *2–5 (Del.Ch. Aug. 8, 2008) (using Rule 1.5(a) factors to award reasonable fee as a sanction for bad faith litigation); *Carpenter v. Dinneen*, 2008 WL 2268922, at *1 (Del.Ch. June 3, 2008) (using Rule 1.5(a) factors to award reasonable fee in litigation on behalf of estate); *Richmond Capital P'rs I, L.P. v. J.R. Invs. Corp.*, 2004 WL 1152295, at *3 (Del.Ch. May 20, 2004) (using

The Rule 1.5(a) factors are substantively indistinguishable from the oft-cited "*Sugarland* factors," which are used to determine a reasonable fee award for a plaintiff that has conferred a corporate benefit or created a common fund.[3]

 Determining the reasonableness of amounts sought "does not require that this Court examine individually each time entry and disbursement." *Aveta,* 2010 WL 3221823, at *6; *accord Blank Rome,* 2003 WL 21801179, at *8–9 (rejecting alleged requirement of line-item review). Discussing specific invoices typically "would neither be useful nor practicable." *Weichert,* 2008 WL 1914309, at *2. "[A]n arm's-length agreement, particularly with a sophisticated client … can provide an initial 'rough cut' of a commercially reasonable fee." *Wis. Inv. Bd. v. Bartlett,* 2002 WL 568417, at *6 (Del.Ch. Apr. 9, 2002), *aff'd,* 808 A.2d 1205 (Del.2002). If a party cannot be certain that it will be able to shift expenses at the time the expenses are incurred, the prospect that the party will bear its own expenses provides "sufficient incentive to monitor its counsel's work and ensure that counsel [does] not engage in excessive or unnecessary efforts." *Aveta,* 2010 WL 3221823, at *6; *see Arbitrium (Cayman Islands) Handels AG v. Johnston,* 1998 WL 155550, at *2 (Del.Ch. Mar. 30, 1998) (considering that client faced prospect of bearing full cost of litigation when evaluating reasonableness), *aff'd,* 720 A.2d 542 (Del.1998).

 Determining reasonableness of amounts sought also does not require the Court to assess independently whether counsel appropriately pursued and charged for a particular motion, line of argument, area of discovery, or other litigation tactic. "For a Court to second-guess, on a hindsight basis, an attorney's judgment … is hazardous and should whenever possible be avoided." *Arbitrium,* 1998 WL 155550, at *4. The party seeking fees carries its burden to justify a challenged litigation decision by showing that "the services that were rendered [were] thought prudent and appropriate in the good faith professional judgment of competent counsel." *Delphi Easter P'rs Ltd. P'ship v. Spectacular P'rs, Inc.,* 1993 WL 328079, at *9 (Del.Ch. Aug. 6, 1993).

 When reviewing amounts submitted for advancement, the nature of the right involved further counsels against granular review:

> In making a decision to advance expenses to a director or officer, the corporation is not extending the amount by which it may be legally liable, as it does when it extends indemnification rights. The right to be indemnified for expenses will exist (or will not) depending upon factors quite independent of the decision to advance expenses. Thus, the decision

Rule 1.5(a) factors to award reasonable fees as condition to dismissal of action under Rule 41(a)(2)); *see also Gen. Motors Corp. v. Cox,* 304 A.2d 55, 57 (Del.1973) (holding that factors set forth in predecessor to Rule 1.5(a) governed fee award in workmen's compensation case); *Husband S. v. Wife S.,* 294 A.2d 89, 93 (Del.1972) (holding in divorce case that "reasonable counsel fees should be evaluated upon the basis of the factors and formula set forth in the [predecessor to Rule 1.5(a)]").

**3.** *See Sugarland Indus., Inc. v. Thomas,* 420 A.2d 142, 149 (Del.1980) (listing factors); *Blank Rome, LLP v. Vendel,* 2003 WL 21801179, at *8 (Del.Ch. Aug. 5, 2003) (noting that factors are "virtually identical"); *see also Aveta Inc. v. Bengoa,* 2010 WL 3221823, at *4–6 (Del.Ch. Aug. 13, 2010) (noting the "powerful family resemblance" between the factors identified in *Sugarland* and Rule 1.5(a), tracing origins of each, concluding that "[c]onvergent jurisprudential evolution produced virtually identical lists," and finding no reason to distinguish between them).

to extend advancement right should ultimately give rise to no net liability on the corporation's part.... [T]he advancement decision is essentially simply a decision to advance credit.

*Advanced Mining Sys., Inc. v. Fricke*, 623 A.2d 82, 84 (Del.Ch.1992) (Allen, C.). "If it is subsequently determined that a corporate official is not entitled to indemnification, he or she will have to repay the funds advanced." *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 214 (Del.2005). Consequently, "[t]he function of a § 145(k) advancement case is not to inject this court as a monthly monitor of the precision and integrity of advancement requests." *Fasciana*, 829 A.2d at 177. Instead, "a balance of fairness and efficiency concerns would seem to counsel deferring fights about details until a final indemnification proceeding...." *Id.*; *see Reinhard v. Dow Chem. Co.*, 2008 WL 868108, at *5 (Del.Ch. Mar. 28, 2008) ("[T]his Court does not relish and will not perform the task of playground monitor, refereeing needless and inefficient skirmishes in the sandbox [over advancements].").

**B. The Reasonableness Of The Advancement Request For The Underlying Action**

■ Danenberg seeks $292,019.91 for fees and expenses incurred to date in the Underlying Action. Danenberg's lawyers are able and experienced attorneys from a reputable firm, and they have charged what I readily recognize as rates comfortably within the market range for complex commercial litigation in this jurisdiction. Danenberg is a sophisticated individual who must pay personally any fees and expenses not initially subject to advancement or for which he ultimately is not indemnified. Danenberg therefore has an incentive to monitor his counsel's efforts, and the bills he has paid "provide an initial

'rough cut' of a commercially reasonable fee." *Bartlett*, 2002 WL 568417, at *6.

Fitracks contends that in light of the stage of the Underlying Action, Danenberg's lawyers could not reasonably have incurred $292,019.91 in fees and expenses. According to Fitracks, Danenberg's counsel has prepared three briefs and engaged in a single oral argument. Resp't's Opp'n ¶ 5. Fitracks contends that Aetrex's bills in the Underlying Action amount to only $85,125, demonstrating that Danenberg's counsel has been running the meter unnecessarily. *Id.* ¶ 6.

Fitracks ignores the Pizza Principle. As Chancellor Strine recently observed, "it is more time-consuming to clean up the pizza thrown at the wall than it is to throw it." *Auriga Capital Corp. v. Gatz Props., LLC*, 40 A.3d 839, 882 n. 184 (Del.Ch.2012). In the Underlying Action, Aetrex responded to a focused breach of contract action by throwing at the wall an extra-large, deep-dish pie with lots of toppings, namely a 43–page, 186–paragraph, 11–count counterclaim and third-party complaint. The six third-party counts included fraud, conspiracy to defraud, unjust enrichment, and civil violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). The complaint also sought injunctive relief and piercing of the corporate veil.

To respond to the complaint, Danenberg's counsel had to investigate the wide-ranging factual allegations, research the legal theories, and develop a defense. With his fellow third-party defendants, Danenberg moved to dismiss the six counts for failure to state a claim on which relief could be granted and for lack of personal jurisdiction. Although other third-party defendants were named, the target was clearly Danenberg, and all of the fraud claims were based upon allegedly fraudulent statements that he made. Virtually all of the arguments made by the six

third-party defendants were arguments that Danenberg would have advanced on his own behalf if he were the sole defendant.

The RICO claim illustrates how Aetrex imposed disproportionate burdens on Danenberg. Drafted to empower law enforcement to pursue actual organized crime figures, RICO employs concepts that mesh suboptimally with traditional commercial litigation. *See, e.g.,* Douglas E. Abrams, *Crime Legislation and the Public Interest: Lessons from Civil RICO,* 50 SMU L.Rev. 33, 63–64 (1996) (noting the "burden ... [that] has emanated ... from the judicial time required to resolve civil RICO's ambiguities and unravel the sheer complexity of attendant factual and legal issues"); *cf. Casey v. Dep't of State,* 980 F.2d 1472, 1477 (D.C.Cir.1992) ("RICO is one of the most confusing crimes ever devised by the United States Congress."). The elements meld portions of multiple federal statutes, *see* Paul E. Coffey, *The Selection, Analysis, and Approval of Federal RICO Prosecutions,* 65 Notre Dame L.Rev. 1035, 1036 (1990) (setting forth the breadth of RICO's statutory influences), and there is extensive case law applying the statute on varying facts, *see, e.g.,* Paul Batista, *Civil RICO Practice Manual* § 2.06 (2012) (discussing the "thousands of ... district court and courts of appeals decisions regarding RICO in the last 40 years"). Danenberg's lawyers were forced to spend significant time parsing through the sprawling claim and researching the applicable law. After diligently pursuing their research, Danenberg's attorneys convinced Aetrex that the RICO claim had no merit, leading Aetrex to dismiss the RICO count voluntarily before oral argument. It took Danenberg's counsel far more work to clean up the RICO count to the point of convincing Aetrex to withdraw it than it did for Aetrex to draft a pleading that recited the statutory elements.

In addition to pleading, Aetrex imposed asymmetric burdens on Danenberg in other ways. For example, in June 2011, after the completion of briefing, Aetrex identified an opinion that it contended would support the assertion of personal jurisdiction over Danenberg because he had sued on his own behalf in the same jurisdiction. Aetrex sought and received permission to file a sur-reply regarding the case. The brief spanned all of five pages and cited only the opinion and two cases cited in the opinion. Danenberg's counsel saw a number of factual distinctions that were not addressed in the opinion. Danenberg's counsel conducted extensive research to determine whether the distinctions had been addressed by other courts and determined that many of them had been. Danenberg eventually submitted a fourteen-page responsive brief that cited twelve opinions plus legal commentary. Again, it was easier for Aetrex to lob in a short brief effectively relying on a single case than it was for Danenberg to show how the decision fit within the larger fabric of the law.

The record in the Underlying Action strongly suggests that Aetrex adopted a litigation strategy designed to overwhelm Danenberg by forcing him to incur significant expenses defending a wide-ranging, unfocused action. Given this context, it is not at all surprising that Danenberg incurred greater fees defending than Aetrex did attacking. Moreover, Aetrex's bills suggest that Aetrex's outside counsel was able to minimize its fees by relying on Aetrex's in-house counsel to perform material amounts of work. Danenberg did not have this luxury.

In submitting its requests for advancements, Danenberg's counsel correctly excluded any work performed for Just4Fit, an entity formed by Danenberg after he

left Fitracks. Danenberg's counsel also correctly excluded $3,127.50, representing counsel's good faith estimate of work solely performed for third-party defendants other than Danenberg on subjects that counsel would not have been forced to address if Danenberg was the sole defendant. I held in the Summary Judgment Opinion that "[i]f a particular defense or litigation activity benefits multiple third-party defendants, but Danenberg would have raised or undertaken it himself if he were the sole third-party defendant, then Fitracks must advance 100% of the related fees and expenses." *Danenberg,* 2012 WL 11220, at *7. Danenberg's counsel complied with this ruling.

At bottom, Fitracks objects not to the rates that Danenberg's counsel has charged, nor to the amounts billed for particular tasks, but rather to the overall quantum of work that Danenberg's counsel performed. This objection asks the Court to second-guess the judgment of Danenberg's counsel, something the Court is loath to do. Danenberg has carried his burden by showing that the services rendered were thought prudent and appropriate in the good faith professional judgment of competent counsel.

Lastly, Fitracks objects to the $70,000 retainer that Danenberg paid to his counsel, arguing that advancements extend only to "reasonable fees actually incurred by Danenberg." Resp't's Opp'n ¶ 25. This Court has approved the advancement of a modest retainer. *See Radiancy, Inc. v. Azar,* 2006 WL 4762868, at *4 (Del.Ch. Jan. 23, 2006). Danenberg actually incurred the charge for the retainer and sent the funds to his counsel. If his counsel does not draw on the retainer, then any remaining amounts will be returned to Danenberg, and Danenberg will repay a corresponding amount to Fitracks with interest. *Citadel,* 603 A.2d at 826.

Having reviewed Danenberg's submissions and considered the Rule 1.5(a) factors, I find that Danenberg has reasonably requested $292,019.91 for fees and expenses incurred to date in the Underlying Action and is entitled to advancements of this amount. Pre- and post-judgment interest, compounded quarterly, shall accrue on this amount at the legal rate beginning February 27, 2012.

### C. The Reasonableness Of The Indemnification Request For This Action

 Danenberg seeks indemnification of $276,332.13 for fees and expenses incurred through January 31, 2012, in this action. Danenberg's counsel charged reasonable rates, and Danenberg would have been forced to pay their bills if he had not succeeded in the advancement action. The bills therefore "provide an initial 'rough cut' of a commercially reasonable fee." *Bartlett,* 2002 WL 568417, at *6.

The total incurred by Danenberg's counsel falls at the high end of what I would expect for a typical advancement proceeding. Having presided over this matter in real-time, it is readily apparent to me why counsel's fees came in towards the upper limit: Fitracks' serial reversals of position and general intransigence.

Despite suing Danenberg personally in the Underlying Action on matters that clearly encompassed his service as a Fitracks officer, and despite representing to the District Court that the suit arose out of statements made by Danenberg while he was a Fitracks officer before Aetrex acquired the company, Fitracks attempted to defeat Danenberg's right to advancements by abandoning those positions in this Court and representing that it never sued Danenberg on that basis at all. To respond, Danenberg's counsel was forced to explain the nature of the Underlying Action and document the assertions Aetrex

had made in greater detail than otherwise would have been necessary.

During the hearing on the parties' cross-motions for summary judgment, the Aetrex/Fitracks lawyers convinced me initially to treat the advancement case as moot by repeatedly confirming that they were not suing Danenberg for any pre-merger conduct in the Underlying Action. They further stipulated that Aetrex would not rely on any pre-September 2, 2008 representations in the Underlying Action and that, to the extent that there was any such reliance, Aetrex would dismiss any claims based on pre-September 2, 2008 representations. These undertakings had obvious implications for the personal jurisdiction motion in the Underlying Action, where Aetrex relied primarily on Danenberg's pre-merger and merger-related activities to obtain jurisdiction.

Yet when I asked counsel to agree on an implementing order, Fitracks proved unable to accept the natural consequences of its statements. Moreover, Aetrex took no action to amend the third-party complaint. When Danenberg brought the representations made in this proceeding to the attention of the District Court, Aetrex contended that the representations had no effect on the Underlying Action or on the motion to dismiss for lack of personal jurisdiction.

This behavior forced Danenberg to engage in additional motion practice and compelled me to hold a second merits hearing. At the conclusion of that hearing, I determined that Fitracks' conduct had muddied the waters sufficiently that I needed to issue a written opinion. Even with the benefit of that decision, Fitracks still could not cooperate sufficiently with Danenberg to implement my rulings. Instead, Fitracks sought to re-litigate matters on which I had ruled under the guise of contesting the reasonableness of Danenberg's fees. Fitracks also withheld its own invoices until I forced its hand, undoubtedly because those invoices suggested that Aetrex's fees in the Underlying Action had been reduced by the use of in-house counsel.

In short, Fitracks unnecessarily prolonged this advancement action and forced both Danenberg and the Court to expend resources beyond what should have been required. I have reviewed Danenberg's invoices carefully, as befits a ruling on final indemnification. After considering the Rule 1.5(a) factors, I find that Danenberg has reasonably requested $276,332.13 for fees and expenses incurred through January 31, 2012, in this action and is entitled to indemnification of this amount. Pre- and post-judgment interest, compounded quarterly, shall accrue on this amount at the legal rate beginning February 27, 2012.

## D. Procedures For Future Requests

In the Summary Judgment Opinion, I instructed the parties to "confer about how to handle future advancement requests, including (i) time periods for submitting, reviewing, and responding to requests, (ii) a mechanism for paying undisputed amounts or providing for full payment subject to an escrow or claw-back, and (iii) procedures for periodically submitting disputes to the Court." *Danenberg*, 2012 WL 11220, at *7. The parties expended minimal effort and made no progress on these issues, except that Fitracks suggested and now requests the appointment of a special master. I must therefore establish procedures for future advancement requests. *See, e.g., Fuhlendorf v. Isilon Sys., Inc.*, 2010 WL 4570225, at *1 (Del.Ch. Nov. 9, 2010) (establishing advancement procedures); *Duthie v. CorSolutions Med., Inc.*, 2008 WL 4173850, at *2 (Del.Ch. Sept. 10, 2008) (same).

This Court has appointed special masters to review fee requests, but has done so as a last resort.[4] Historically, the special masters have been distinguished Delaware practitioners who have carried out the task of reviewing fee applications for reasonableness diligently, thoroughly, and well. But appointing a special master comes at a cost. Seasoned Delaware lawyers are not cheap, and the additional layer of review lengthens the timeline to payment. One might hope that the specter of greater enforcement expense would temper disputatious behavior, but experience suggests that corporations resist advancement vigorously before the special master, take advantage of the opportunity to raise objections before this Court, and then still may pursue an appeal. *See, e.g., Tafeen v. Homestore, Inc.,* 2005 WL 789065, at *5–9 (Del.Ch. Mar. 29, 2005) (accepting in part and modifying in part the Special Master's reasonableness determination), *aff'd,* 888 A.2d 204 (Del.2005). The resulting procedure can bear little resemblance to the summary and efficient proceeding contemplated by statute, and the delay and additional burden can impair the purpose of advancements, which is to relieve the covered person of the need to fund his defense in the underlying litigation.

This case should not require the involvement of a special master. It is an advancement dispute over the extension of credit, not an indemnification dispute over final liability. The Summary Judgment Opinion granted Danenberg advancements for the Underlying Action as a whole. The Summary Judgment Opinion also determined that Danenberg is entitled to full advancement for all work that his counsel would have to perform if Danenberg were the sole third-party defendant in the case, even if his counsel's efforts also benefited other third-party defendants. It should not be difficult to apply these rulings to determine what fees and expenses are subject to advancement.

 Delaware lawyers should be able to work in good faith to process advancement requests. "A Delaware lawyer always appears as an officer of the Court and is responsible for the positions taken, the presentation of the case, and the conduct of the litigation." *State Line Ventures, LLC v. RBS Citizens, N.A.,* 2009 WL 4723372, at *1 (Del.Ch. Dec. 2, 2009).

> All members of the Delaware Bar are officers of the Court. Although a lawyer has a duty to his or her client, each Delaware lawyer has sworn an oath to practice with all good fidelity as well to the Court as to the client. This responsibility to the Court takes precedence over the interests of the client because officers of the Court are obligated to represent these clients zealously *within* the bounds of both the positive law and the rules of ethics.

*In re Abbott,* 925 A.2d 482, 487–88 (Del. 2007) (internal quotation marks omitted). As officers of the Court, Delaware lawyers have an obligation to avoid unnecessary cost and delay. *See* Lawyers' Rules of Prof'l Conduct R. 3.2. They have an affirmative duty to assist the Court in its efforts to "secure the just, speedy and in-

---

4. *Homestore, Inc. v. Tafeen,* 888 A.2d 204, 209 (Del.2005) (noting Chancellor's decision to appoint special master once there appeared to be "no reasonable hope of light at the end of the tunnel" in terms of the parties' ongoing disputes (internal quotation marks omitted)); *Fuhlendorf,* 2010 WL 4570225, at *1 n. 3 (appointing special master where it appeared "unfortunately, unavoidable"); *Reinhard,* 2008 WL 868108, at *6 (declining to appoint special master where Chancellor "d[id] not believe this case ha[d] reached a point where there is 'no reasonable hope of light at the end of this tunnel'" (quoting *Homestore, Inc. v. Tafeen,* 888 A.2d 204, 209 (Del.2005))).

expensive determination of every proceeding." Ct. Ch. R. 1. They also have a duty to meet and confer in a good faith effort to resolve differences. *See, e.g., Judy v. Preferred Commc'n Sys., Inc.,* 2010 WL 2367481, at *1 (Del.Ch. June 11, 2010); *Tafeen v. Homestore, Inc.,* 2004 WL 1367005, at *1 (Del.Ch. June 15, 2004); *Rhone–Poulenc Surfactants & Specialties, Inc. v. GAF Chems. Corp.,* 1993 WL 69529, at *1 (Del.Ch. Mar. 2, 1993).

Going forward, the senior member of the Delaware bar representing each side will assume personal responsibility for addressing advancement requests. Unless modified by stipulation, the parties will adhere to the following procedures:

1. Before the 10th calendar day of each month, Danenberg's counsel will submit an advancement demand for fees and expenses incurred during the previous month. Any fees or expenses not included in the demand are deemed waived. The advancement demand will include the following:

 a. A detailed invoice identifying the fees and expenses for which advancement is requested. The invoice shall provide for each time entry the date, timekeeper, billing rate, task description, time incurred, and amount charged. The invoice shall identify with detail for each expense the date of the charge, its nature, and the amount incurred.

 b. A certification signed by the senior member of the Delaware bar representing Danenberg attesting that (i) he personally reviewed the invoice, (ii) each time entry and expense falls within the scope of Danenberg's advancement rights, (iii) in his professional judgment, the fees and expenses charged are reasonable in light of the factors listed in Rule 1.5(a), and (iv) the services rendered were thought prudent and appropriate in his good faith professional judgment.

2. Before the 20th calendar day of the month, Fitracks' counsel will respond to the advancement demand in writing. The response shall identify each specific time entry or expense to which Fitracks objects and explain the nature of the objection. The senior member of the Delaware bar representing Fitracks shall certify that (i) he personally reviewed the advancement demand and (ii) in his professional judgment, the disputed fees and expenses are not reasonable or otherwise fall outside the scope of the advancement right. The response shall cite any legal authority on which Fitracks relies. Any objection not included in the response is deemed waived.

3. Fitracks shall pay the undisputed amount contemporaneously with the response. If Fitracks disputes more than 50% of the amount sought in any advancement demand, Fitracks shall pay 50% of the amount sought and Danenberg's counsel shall hold the amount exceeding the undisputed amount in its escrow account pending resolution of the dispute regarding such portion.

4. Before the 25th calendar day of each month, Danenberg's counsel will reply to the advancement response in writing and provide supporting information and authority.

5. Before the last calendar day of the month, the senior members of the Delaware bar representing each side will meet, in person, and confer regarding any disputed amounts. Any additional advancement that results from the meet-and-confer session will be paid

with the next month's payment of undisputed amounts.

6. Not more frequently than quarterly, Danenberg may file an application pursuant to Court of Chancery Rule 88 seeking a ruling on the disputed amounts. Briefing shall consist of a motion, an opposition filed within fifteen days of the motion, and a reply filed within ten days of the opposition. Danenberg and Fitracks shall not raise any new arguments not previously raised with the other side in the applicable demand, response, reply, or meet-and-confer. Danenberg and Fitracks only shall cite authorities·identified in writing in the applicable demand, response, or reply. The Court will determine if a hearing is warranted.

7. If the Court grants an application in whole or part, then pre-judgment interest is due on the adjudicated amount from the date of the applicable advancement demand. In addition, in parallel with the next advancement demand, Danenberg may demand indemnification for the fees and expenses incurred in connection with the granted application, proportionate to the extent of success achieved. The parties shall address the indemnification demand in the same manner as the advancement demand. Except in connection with a successful application, Danenberg shall not seek or receive advancement or indemnification for time spent preparing invoices and advancement demands, addressing responses, or conferring regarding advancement requests.

## III. CONCLUSION

Judgment is entered in favor of Danenberg for advancements in the amount of $292,019.91 and indemnification in the amount of $276,332.13. Interest on these amounts, compounded quarterly, shall accrue at the legal rate beginning February 27, 2012 through the date of payment. Going forward, unless modified by stipulation, the parties shall follow the procedures set forth in this opinion. **IT IS SO ORDERED.**