COURT OF CHANCERY
OF THE
STATE OF DELAWARE

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

September 18, 2020

Theodore A. Kittila, Esquire
James G. McMillan, III, Esquire
Halloran Farkas & Kittila LLP
5803 Kennett Pike, Suite C
Wilmington, DE 19807

William E. Gamgort, Esquire
Jennifer M. Kinkus, Esquire
Young Conaway Stargatt & Taylor, LLP
1000 North King Street
Wilmington, DE 19801

RE: *Carlos Eduardo Lorefice Lynch, et al., v. R. Angel Gonzalez Gonzalez, et al.,*
Civil Action No. 2019-0356-MTZ

Dear Counsel,

On July 31, 2020, I issued a post-trial memorandum opinion that determined Defendants prevailed in this matter.[1] I found that "Lynch, individually and purportedly speaking for Belleville, initiated this action to complete his grab at . . . Belleville,"[2] and that "[c]lear evidence supports a finding that Lynch initiated this action, brought his claims, and ultimately litigated those claims in bad faith."[3] As a result, I ordered that Lynch bear Defendants' attorneys' fees and costs under the bad

---

[1] *See Lynch v. Gonzalez*, 2020 WL 4381604 (Del. Ch. July 31, 2020).

[2] *Id.* at *48.

[3] *Id.* at *49.

faith exception to the American Rule and contemplated entry of a final order and judgment establishing the amount of the award.[4]

Accordingly, on August 20, Defendants submitted their Motion for Costs in Accordance with Court of Chancery Rule 54(d) (the "Motion"),[5] as well as their Memorandum Detailing Defendants' Attorneys' Fees and Expenses (the "Application").[6] Defendants seek $16,500.25 in the Motion, and $2,306,450.65 plus fees on fees in the Application as briefed.[7] After briefing the Application and Motion, the parties "are not particularly far apart:"[8] Lynch disputed no more than $173,137.16 of Defendants' requests.[9] For the following reasons, the Motion is GRANTED, and the Application is GRANTED with certain exceptions.

---

[4] *Id.* at *47–49. In pursuit of absolute clarity, I note that the fee award was against Lynch, not the Company.

[5] Docket Item ("D.I.") 250.

[6] D.I. 254.

[7] *See* D.I. 250, 254, 268.

[8] D.I. 268 at 4.

[9] D.I. 261 at 16. Lynch's response identified $106,527.66 in fees and expenses that they concluded to be unreasonable, but maintained that the award should be reduced by at least $173,137.16. *Id.*

## I.    Fees

Defendants' Application, supported by the necessary Court of Chancery Rule 88 affidavit (the "Affidavit"),[10] requests at least $2,306,450.65 in fees and expenses incurred by Dorta & Ortega, P.A. ("Dorta & Ortega"), as lead counsel, and Young Conaway Stargatt & Taylor, LLP ("Young Conaway"), as Delaware counsel.[11]

"Delaware law dictates that, in fee shifting cases, a judge determine whether the fees requested are reasonable."[12]  The Court "has broad discretion in determining the amount of fees and expenses to award."[13]  The Court reviews a fee application pursuant to the factors set forth in Rule 1.5(a) of the Delaware Lawyers' Rules of Professional Conduct ("DLPRC"):[14]

---

[10] *See* Ct. Ch. R. 88; D.I. 254, Affidavit of William E. Gamgort in Accordance with Court of Chancery Rule 88 [hereinafter "Aff."]; *see also* D.I. 253 (collecting materials supporting the Application and Affidavit), 254 (same), 255 (same), 256 (same), 257 (same), 258 (same), 268 (collecting additional supporting materials).

[11] *See* D.I. 268 at 15 (decreasing requested award from $2,328,006.05 to $2,306,450.65).

[12] *Mahani v. Edix Media Gp., Inc.*, 935 A.2d 242, 245 (Del. 2007); *see also Aveta v. Bengoa*, 2010 WL 3221823, at *4 (Del. Ch. Aug. 13, 2010) (noting that the Court assess fee awards for reasonableness).

[13] *Black v. Staffieri*, 2014 WL 814122, at *4 (Del. Feb. 27, 2014) (TABLE) (citing *Kaung v. Cole Nat'l Corp.*, 884 A.2d 500, 506 (Del. 2005)).

[14] *See Mahani*, 935 A.2d at 245–46.

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

"Determining reasonableness does not require that this Court examine individually each time entry and disbursement."[15] Nor does it "require the Court to assess independently whether counsel appropriately pursued and charged for a

---

[15] *Aveta*, 2010 WL 3221823, at *6 (citing, among other cases, *M & G Polymers USA, LLC v. Carestream Health, Inc.*, 2010 WL 1611042, at *76 (Del. Super. Apr. 21, 2010) (finding no authority that "requires this Court to engage in a line-by-line analysis of the components of an attorneys' fee application when an award of fees is based upon the bad faith exception to the American Rule")).

particular motion, line of argument, area of discovery, or other litigation tactic."[16]

"A party's expenses are reasonable if they were 'actually paid or incurred[,] . . . were . . . thought prudent and appropriate in the good faith professional judgment of competent counsel[,] and were charge[d] . . . at rates, or on a basis, charged to others for the same or comparable services under comparable circumstances.'"[17] "For a Court to second-guess, on a hindsight basis, an attorney's judgment" as to whether work was necessary or appropriate "is hazardous and should whenever possible be avoided."[18]

---

[16] *Weil v. VEREIT Operating P'ship, L.P.*, 2018 WL 834428, at *12 (Del. Ch. Feb. 13, 2018) (quoting *Danenberg v. Fitracks, Inc.*, 58 A.3d 991, 997 (Del. Ch. 2012)).

[17] *Id.* (alterations and omissions in original) (quoting *Delphi Easter P'rs Ltd. P'ship v. Spectacular P'rs, Inc.*, 1993 WL 328079, at *9 (Del. Ch. Aug. 6, 1993)).

[18] *Arbitrium (Cayman Is.) Handels AG v. Johnston*, 1998 WL 155550, at *4 (Del. Ch. Mar. 30, 1998)), *aff'd*, 720 A.2d 542 (Del. 1998); *accord Sparton Corp. v. O'Neil*, 2018 WL 3025470, at *6 (Del. Ch. June 18, 2018) (noting that "the hourly rates charged by Defendants' counsel are not excessive, and the staffing of attorneys appears appropriate" and should not be second-guessed); *Weil*, 2018 WL 834428, at *12 (stating that "whether counsel appropriately pursued and charged for a particular . . . litigation tactic" should not be second-guessed); *Aveta*, 2010 WL 3221823, at *8 (expanding the rationale and noting where "staffing appears appropriate" it "need not be second-guessed"). Still, the Court may consider "whether the number of hours devoted to litigation was excessive, redundant, duplicative or otherwise unnecessary," *Fitracks*, 58 A.3d at 996 (quoting *Mahani*, 935 A.2d at 247–48), and may decrease an award where the applicant's "own litigation efforts have in some ways been less than ideal in terms of timeliness or prudent focus," *Auriga Capital Corp. v. Gatz Props.*, 40 A.3d 839, 882 (Del. Ch. 2012), *aff'd*, 59 A.3d 1206 (Del. 2012).

One "indication" of reasonableness is the "reality" that when the fee-seeking party litigated the matter and "paid the expenses it now seeks to recover, [it] did not know that it would be able to shift those expenses to [the other party]."[19] This evidences that the fee-seeking party "had sufficient incentive to monitor its counsel's work and ensure that counsel did not engage in excessive or unnecessary efforts."[20]

In addition, "[w]hen awarding expenses as a contempt sanction or for bad faith litigation tactics, this Court takes into account the remedial nature of the award."[21] In those cases, the fee award "is designed to make whole the party who was injured by the other side's contumely. The remedial nature the award commends putting primary emphasis on reimbursing the injured party. The results achieved are of secondary importance."[22] And when assessing the aggregate fees requested in situations involving contempt or bad faith, this Court considers whether they "are within the range of what a party reasonably could incur over the course of . . .

---

[19] *Aveta*, 2010 WL 3221823, at *6.

[20] *Id.*

[21] *Id.* (citing *In re SS & C Techs., Inc. S'holders Litig.*, 2008 WL 3271242, at *3 n.14 (Del. Ch. Aug. 8, 2008) (noting that because fees were awarded as a sanction, the Court did not focus narrowly on the Rule 1.5(a) factors), and also citing *Arbitrium*, 1998 WL 155550, at *3 (taking into account that fees were shifted because of bad faith litigation tactics when evaluating award)).

[22] *Id.* (citation omitted).

pursuing an adversary engaged in a mix of open defiance, evasion and obstruction."[23]

As an initial matter, Lynch asserts Defendants' submission is vague. In assessing the reasonableness of Defendants' requested fees, "[t]he Court of Chancery has discretion in determining the level of submission required."[24] I am satisfied that Defendants' Affidavit and accompanying exhibits sufficiently apprise the Court of the fees and expenses Defendants incurred in this litigation and the underlying reasons for those amounts.

Lynch does not dispute the staffing or rates charged by Dorta & Ortega and Young Conaway.[25] Both appear reasonable to me: the rates charged are on par with or below similarly situated firms; Dorta & Ortega discounted 20% of their fees charged; and both firms enjoy excellent reputations and prudently staffed the matter

---

[23] *Id.* (internal quotation marks omitted).

[24] *Id.* at *3 (citing *Cohen v. Cohen*, 269 A.2d 205, 207 (Del. 1970)).

[25] Dorta & Ortega billed 4,213.6 hours, resulting in $1,337,631.41 in fees and $237,992.87 in expenses. The firm charged $330 per hour for associates and $500 per hour for the lead partner, which is less than the average partner rate at a similar boutique litigation firm in Miami. Young Conaway billed 1,442 hours, resulting in $704,204.00 in fees and $8,177.77 in expenses. The firm permanently staffed two attorneys on the matter, charging a maximum of $570 per hour for the lead partner (lower than the average partner rate at peer Delaware firms), and $475 per hour for the senior associate (an average rate for a Delaware associate with similar experience). *See* Aff. ¶ 6; D.I. 254 at 10–13.

with experienced attorneys. [26] Defendants' substantial affidavits support the conclusion that the time spent, number of attorneys involved, and resulting dollar amounts are reasonable for the nature of the dispute and the types of submissions that were prepared in this litigation.

This litigation was complex, contentious, and time-consuming. It was also expedited; such litigation incurs more substantial attorneys' fees than litigation proceeding at the customary pace. [27] Between May 2019 and April 2020, Defendants' counsel devoted over 5,000 hours to this matter. Undoubtedly, this litigation consumed a substantial percentage of counsel's time from pleading through trial. The early stages of these proceedings presented expedition, a motion for a temporary restraining order, and entry of a status quo order.

Thereafter, counsel—and the Court—endured combative, motion-laden discovery. The parties exchanged over 300,000 pages of documents, most of which appeared in Spanish and needed to be translated for review, production, and use in

---

[26] *See Aveta*, 2010 WL 3221823, at *8.

[27] *See, e.g.*, *Brandt v. CNS Response, Inc.*, 2009 WL 2425757, at *1 (Del. Ch. Aug. 3, 2009) (recognizing that the risk of "unnecessary confusion and expenditure of time and attorneys' fees in an expedited matter"); *In re First Interstate Bancorp Consol. S'holder Litig.*, 756 A.2d 353, 364 n.6 (Del. Ch. 1999) (considering, on a fee application, whether fees were incurred "in litigation conducted on a non-expedited schedule"), *aff'd sub nom. First Interstate Bancorp v. Williamson*, 755 A.2d 388 (Del. 2000).

this litigation. Defendants took four depositions and defended six, many of which were also translated. Both sides propounded numerous discovery requests. Discovery motions were frequent and relatively complex. Finally, counsel endured the friction of a three-day trial, which included preparation of 163 joint exhibits and testimony of ten live witnesses, predominantly in Spanish.

This legwork proved complicated and, unsurprisingly, time-consuming, especially in view of what was at stake: ownership and management of a media conglomerate worth at least $27.345 million, based on its 2007 acquisition value. To prevail, Defendants had to prove Plaintiff Lynch's carefully laid trap was a fallacy, over Lynch's obstinate efforts to convince the Court it was reality. Doing so required numerous motions, many in the discovery context. I found in favor of Defendants on all viable counts, determining that Defendants Gonzalez and Televideo own a majority stake in the Company and that Lynch had no rightful claim to its ownership or management.

In *Arbitrium (Cayman Islands) Handels AG v. Johnston*, then-Vice Chancellor Jacobs faced very similar circumstances and made observations that are applicable here:

> This case was, to say the least, highly unusual. The [plaintiff] w[as] [a] determined adversar[y] who, it ultimately became clear, would stop at very little to retain [his] control of [the Company]. . . . As this Court found [previously], the [plaintiff] defrauded [defendants] and attempted to defraud this Court by giving false testimony and manufacturing evidence. [The plaintiff] w[as] found to have misled another court and perhaps the governmental [] authorities as well. . . . [Defendants'] counsel, however, were able to penetrate the obfuscation. But, only by a combination of perseverance and highly skilled legal [] detective work were they able to put the pieces together and determine the essential facts that the defendants had successfully been able to conceal. Those efforts, including particularly that required to rebut the false testimony and manufactured evidence, was not without its cost. Manifestly, those efforts required additional legal time and . . . expense[s] that in an "ordinary" case (one not involving bad faith) would not have been incurred.[28]

The result achieved soundly supports a determination that Defendants' requested fees are reasonable. "[I]ndeed, the Court is surprised that it was not more. That amount must be borne by [Lynch] whose conduct necessitated the services that fee represents."[29]

Evidencing the reasonableness of the fees sought, Defendants have paid all the fees they ask to be shifted. They did so when they "did not know that it would be able to shift those expenses to [Lynch]."[30] Defendants "had sufficient incentive

---

[28] *Arbitrium*, 1998 WL 155550, at *3.

[29] *Id.*

[30] *Aveta*, 2010 WL 3221823, at *6.

to monitor [counsels'] work and ensure that counsel did not engage in excessive or unnecessary efforts." [31]    Based on Defendants' submissions, I conclude that Defendants' requested fee award is *prima facie* reasonable in view of the factors set forth in DLRPC Rule 1.5(a) and the "remedial nature" of the award that "put[s] primary emphasis on reimbursing the injured party."[32]

Lynch objects to one category of fees:  those incurred in motion practice.[33] When an award is disputed as unreasonable, the fee-seeking party bears the burden "to justify a challenged litigation decision by showing that the services that were rendered [were] thought prudent and appropriate in the good faith professional judgment of competent counsel."[34]  But this Court does not permit an objecting party to "litigate the particular details of individual expenses,"[35] as "[d]iscussing specific invoices typically would neither be useful nor practicable."[36]

---

[31] *Id.*

[32] *Id.*

[33] This letter does not address Lynch's objections to pre-suit fees or unrelated fees that were mistakenly billed, as those objections were resolved in briefing.  *See* D.I. 268 at 5–6.

[34] *Fitracks*, 58 A.3d at 997 (alteration in original) (internal quotation marks omitted) (quoting *Delphi Easter P'rs Ltd. P'ship*, 1993 WL 328079, at *9).

[35] *White v. Curo Texas Hldgs., LLC*, 2017 WL 1369332, at *6 (Del. Ch. Feb. 21, 2017) (collecting cases).

[36] *Fitracks*, 58 A.3d at 997 (internal quotation marks omitted) (quoting *Weichert Co. of Pa. v. Young*, 2008 WL 1914309, at *2 (Del. Ch. May 1, 2008)).

Lynch contends Defendants "over-litigat[ed]" this matter and incurred "unnecessary"[37] fees for "wasteful motion practice,"[38] particularly in the context of the Albavision emails[39] and the status quo order.[40] Lynch argues that Defendants are not entitled to fees on those motions because Plaintiffs, not Defendants, prevailed on some of Defendants' motions. And Lynch contends that Defendants' fees incurred from those motions are *too low*, which they believe supports a finding that the fees were unnecessary and unreasonable.[41]

I reject Lynch's position. The fee award is based on Defendants' having prevailed in the war over Lynch's bad faith litigation: Lynch's attempt to excise fees for victories in smaller battles over motions is not supported by Delaware law.[42]

---

[37] D.I. 261 at 7.

[38] *Id.* at 12.

[39] *See, e.g.*, *Lynch v. Gonzalez*, 2019 WL 6125223, at *5 (Del. Ch. Nov. 18, 2019).

[40] *See, e.g.*, *Lynch v. Gonzalez*, 2020 WL 3422399, at *1 (Del. Ch. June 22, 2020). Lynch claims Defendants burdened the Court with frivolous motions in an attempt to derail trial. *See* D.I. 261 at 7–13. To the extent Lynch blames Defendants for the lion's share of these allegedly "unnecessary" motions, Lynch mischaracterizes this litigation. In my view, the parties share that burden equally: both filed, pursued, and sometimes lost motions that perplexed opposing counsel and, occasionally, the Court.

[41] D.I. 261 at 10, 12.

[42] *See Weil*, 2018 WL 834428, at *12. Lynch cites *Preferred Investment Services, Inc. v. T & H Bail Bonds, Inc.*, 2013 WL 3934992 (Del. Ch. July 24, 2013), *aff'd sub nom.* 108 A.3d 1225 (Del. 2015), for the proposition that "[a] fee award may be decreased when the non-prevailing party nevertheless prevailed on some of the procedural disputes during the course of the litigation." D.I. 261 at 7. This case is inapposite and does not support the motion-by-motion approach Lynch advocates. In *Preferred Investment Services*, the Court

This Court does not relitigate motions in hindsight,[43] or place substantial weight on motion-by-motion outcomes in view of the "remedial nature" of the award that "put[s] primary emphasis on reimbursing the injured party."[44]  Where the fee-seeking party has demonstrated that counsel's time was "devoted generally to the litigation as a whole," the prevailing party may recover all attorneys' fees "related to the issues in this lawsuit," even fees for unsuccessful motions and other proceedings.[45]  Defendants have met that burden.  While Defendants' efforts were not always fruitful, and while at times Defendants pulled the trigger too readily on a

---

determined that the plaintiff "knew or should have known from very early in this litigation, if not before it filed suit, that its principal claims were frivolous, yet it persisted."  2013 WL 3934992, at *27.  However, the Court reduced the defendant's award to "only 80% of their fees and expenses, rather than 100%, because [the plaintiff] prevailed on the merits of certain secondary aspects of its claims," and recognized that the plaintiff "also prevailed on some, but far less than a majority, of the procedural disputes that arose during the pretrial phase of this case."  *Id.*  The reduction was primarily driven by the plaintiff's success on the merits of certain claims.  Here, Lynch has not secured a similar victory.

[43] *See Weil*, 2018 WL 834428, at *12; *Staffieri v. Black*, 2013 WL 4038110, at *5 (Del. Ch. Aug. 8, 2013) (ORDER).

[44] *Aveta*, 2010 WL 3221823, at *6 (citation omitted); *see also id.* at *9 (stating that "[t]he denial of [a] motion does not foreclose [the applicant's] ability to recover its expenses" because "the primary consideration is to make [the applicant] whole for the expenses that [the other party's] contumacious conduct caused [the applicant] to incur").

[45] *Liqwd, Inc. v. L'Oreal USA, Inc.*, 2019 WL 6840353, at *30–31 (D. Del. Dec. 16, 2019) (awarding fees for matters "generally related to the issues in [that] lawsuit" because counsel's time was devoted to the matter "as a whole" (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434–35 (1983))); *see also, e.g.*, *Aveta*, 2010 WL 3221823, at *9 (awarding fees despite lost motion).

motion, their motions were not frivolous and were brought in good faith. And Lynch's observation that Defendants' motion practice fees are surprisingly low—which was a result of Defendants' efficient billing—supports the conclusion that Defendants' fees were reasonable.

## II.    Costs

Defendants also pursue costs. The Motion requests prevailing party costs under Rule 54(d). The Application requests costs under the bad faith exception. Defendants are entitled to their requested costs under Rule 54(d) and are also entitled to additional costs with certain exceptions.

### A.    The Motion

Defendants' Motion requests $16,500.25 in costs under Court of Chancery Rule 54(d).[46] Under that Rule, "costs shall be allowed as of course to the prevailing party unless the Court otherwise directs."[47] Permitted costs are "those expenses necessarily incurred in the assertion of a right in court, such as court filing fees, fees associated with service of process or costs covered by statute."[48] This properly

---

[46] D.I. 250 ¶ 6.

[47] Ct. Ch. R. 54(d).

[48] *Adams v. Calvarese Farms Maint. Corp.*, 2011 WL 383862, at *6 (Del. Ch. Jan. 11, 2011) (alteration and internal quotation marks omitted) (quoting *FGC Hldgs. Ltd. v. Teltronics, Inc.*, 2007 WL 241384, at *17 (Del. Ch. Jan. 22, 2007)); *see also Dewey*

includes "fees remitted to the Court of Chancery," including those pursuant to Court of Chancery Rule 3(bb), "and those fees paid to LexisNexis for" use of File & Serve*Xpress*.[49] The specific definition of "costs" under the Rule means that "[a]n allowance of court costs does not amount to an attempt by the court to fully compensate a litigant for all the expenses the litigant incurred[.]"[50]

Defendants prevailed in this matter.[51] They incurred $4,492.25 in electronic filing fees and $11,908.50 in Court fees and charges pursuant to Court of Chancery Rule 3(bb), as supported by Defendants' affidavit and exhibit ("Exhibit 1").[52] On their face, the supporting affidavit and Exhibit 1 confirm that the amounts requested in the Motion are for costs routinely awarded under Rule 54(d), including court costs, filing fees, and File & Serve*Xpress* charges.[53] Defendants' Motion requests costs within the scope of the Rule; they are "allowances in the nature of incidental

---

*Beach Lions Club v. Longacre*, 2006 WL 2987052, at *1 (Del. Ch. Oct. 11, 2006) (noting that Rule 54(d) encompasses costs that "[a] party cannot litigate a case without incurring").

[49] *Longacre*, 2006 WL 2987052, at *1.

[50] *Id.* (internal quotation marks omitted) (quoting *Sliwinski v. Duncan*, 1992 WL 21132, at *3 (Del. Jan. 15, 1992) (TABLE)).

[51] *See Teltronics, Inc.*, 2007 WL 241384, at *17 (stating the prevailing party is entitled to costs under Rule 54(d)); *see also Graham v. Keene Corp.*, 616 A.2d 827, 828 (Del. 1992) ("[T]he term 'prevailing party' as used in Rule 54(d) refers to the party for whom final judgment has been entered in any civil action.").

[52] *See* D.I. 250 (including an affidavit and accompanying exhibit).

[53] *See* D.I. 250, Ex. 1.

damages awarded by law to reimburse the prevailing party for expenses necessarily incurred in the assertion of his rights in court."[54]

Lynch objects, noting that it is in the Court's discretion to determine whether the prevailing party is entitled to the full extent of costs requested under Rule 54(d) and that a "significant factor for the court to consider is whether the costs could have reasonably been avoided."[55] Lynch argues that the costs associated with the motions discussed above "could reasonably have been avoided," without identifying the corresponding charges and amounts in Exhibit 1 that are beyond those recoverable under Rule 54(d).[56]

"[T]his Court does not pour over counsel's individual litigation decisions with the benefit of hindsight."[57] As stated above, I will not "assess independently whether counsel appropriately pursued and charged for a particular motion, line of argument, area of discovery, or other litigation tactic."[58] I decline to exercise my

---

[54] *Longacre*, 2006 WL 2987052, at *1 (quoting *Comrie v. Enterasys Networks, Inc.*, 2004 WL 936505, at *4 (Del. Ch. Apr. 27, 2004)).

[55] D.I. 261 at 15–16 (quoting *Kuratle Contracting, Inc. v. Linden Green Condo., Ass'n*, 2014 WL 5391291, at *7 (Del. Super. Ct. Oct. 22, 2014)).

[56] *Id.* at 16.

[57] *Staffieri*, 2013 WL 4038110, at *5 (citing *Arbitrium*, 1998 WL 155550, at *4).

[58] *Weil*, 2018 WL 834428, at *12.

discretion to reduce the amounts Defendants are entitled to under Rule 54(d), and

conclude Defendants are entitled to the full amount of costs requested.

### B.  The Application

The Application requests additional costs and expenses shifted under the bad

faith exception totaling $246,170.64.[59]  "[T]his is an award of fees and expenses

pursuant to the bad faith exception to the American Rule.  When such an award is

granted, it typically includes reasonable litigation expenses."[60]  Distinct from the

expenses sought in Defendants' Motion, "[t]he more limited interpretation of

'costs' under Rule 54 and the cost statute does not apply to the equitable shifting

of fees and expenses."[61]

---

[59] *See* D.I. 254 at 13–14.  Those include charges for hearing, deposition, and trial transcripts and video; translation services for documents, depositions, and trial; trial technology support and services; technology support for document collection and production; photocopying charges; courier services and process services for subpoenas; computerized legal research; travel and meal expenses for attorneys and witnesses for hearings, depositions, and trial; and teleconference services.

[60] *Staffieri*, 2013 WL 4038110, at *6 (distinguishing expenses awarded under the bad faith exception from expenses awarded as a matter of course under Rule 54(d) and collecting cases); *see also Kuratle Contracting, Inc.*, 2014 WL 5391291, at *8 (noting that the fee-seeking party may recover costs and expenses under the bad faith exception beyond those recoverable under Rule 54(d)).

[61] *Staffieri*, 2013 WL 4038110, at *6 (citing *Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Estate Fund*, 2013 WL 1914714, at *12 (Del. May 9, 2013)).

The Affidavit and accompanying submissions identify reasonable expenses, including standard items like photocopying, legal research, and court costs. [62] Lynch disputes only some travel expenses; [63] Defendants bear the burden of justifying those expenses.[64] Lynch does not challenge the remaining expenses, and none appears unreasonable.

Lynch objects first to Gonzalez's $5,749 in hotel expenses for the three-day trial. Defendants explained that Gonzalez stayed at the Hotel DuPont, and he chose a larger room because he conducted business during his trip. I agree with Lynch that this expense is unreasonable in view of less expensive accommodations within equal or similar proximity to counsel's offices and the courthouse. And expenses incurred to conduct business as usual, rather than litigation, should not be shifted. To remedy this issue, I adopt Defendants' proposed solution: they are awarded only the cost of

[62] *See, e.g.*, D.I. 254, Compendium A, Tabs 1–6; D.I. 257, App. A, B.

[63] *See* D.I. 261 at 13–15 (collecting citations to objectionable expenses). Lynch's objection to these expenses was based, in part, on their contention that Defendants did not provide invoices. Defendants rectified this issue, providing substantiating details and booking confirmations. *See* D.I. 268, Ex. B. In addition, briefing resolved Lynch's objection to nonrefundable airfare costs for Miami counsel's travel to Delaware for post-trial argument on April 8, 2020. *See* D.I. 268 at 14.

[64] *See Fitracks*, 58 A.3d at 997.

Morelia Gonzalez's accommodations for trial, totaling $1,995.50, which Lynch did not object to as unreasonable.[65]

Next, Lynch objects to $1,910.30 in travel expenses for Juan Salvador Gonzalez, who was not a party or deponent in this matter and who did not testify at trial. This objection is overruled. Defendants listed Juan Salvador as a witness on the pre-trial order and reserved the right to call him to testify at trial. Defendants represented to the Court that they had the intention of doing so, but ultimately choose not to because of time constraints at trial. I do not second-guess counsel's decision to identify Juan Salvador as a witness or to forego calling him to the stand.[66] An award including his travel expenses is reasonable.

Lynch also objects to two airline tickets worth $5,393 each for witnesses Liliana Silvia Casaleggio and Silvia Susana Curuchet to travel from Argentina to Wilmington to testify at trial. Defendants concede that the airfare was first class for the nine-hour leg of their flights between Argentina and Philadelphia.[67] This Court has recognized that first class airline tickets are "an expense generally considered

---

[65] *See* D.I. 257, App. A at A-111.

[66] *See O'Neil*, 2018 WL 3025470, at *6; *Weil*, 2018 WL 834428, at *12; *Aveta*, 2010 WL 3221823, at *8; *Arbitrium*, 1998 WL 155550, at *4.

[67] *See* D.I. 268, Ex. B at B-27 to B-29.

unreasonable."[68]  However, I agree with Defendants that this upgraded seating was a reasonable accommodation in this instance given the length of these flights, which totaled nearly twenty-four hours, and given the fact that these were third-party witnesses called to testify in a foreign court under penalty of perjury.  This expense is reasonable under the circumstances, and Lynch's objection is overruled.

Next, Lynch objects to an "unsupported" spreadsheet of $7,789.30 in expenses surrounding Fernando Guido Contreras Lopez's deposition, [69] which includes at least $463.38 in travel expenses between November 2 and 3, 2019, when depositions concluded on October 31. [70]  Defendants, who bear the burden of justifying this expense and demonstrating that it is reasonable, do not respond to this objection. [71]  From my review of this spreadsheet, I cannot conclude that these expenses are reasonable on their face, as many of the expenses were distant in time or location from Lopez's deposition.[72]  The fee award shall therefore be reduced in the amount of $7,789.30.

---

[68] *Underbrink v. Warrior Energy Servs. Corp.*, 2009 WL 536904, at *5 (Del. Ch. Feb. 24, 2009).

[69] *See* D.I. 261 at 14.

[70] *See* D.I. 257, App. A at A-112.

[71] *See* D.I. 268 at 12–15.

[72] *See* D.I. 257, App. A at A-112.

Finally, Lynch objects to $1,348.60 in business class airfare for Delaware counsel's travel to Miami for depositions, citing the proposition that first-class airfare is "generally considered unreasonable."[73] As with the other fees and expenses in this matter, Defendants paid this expense at the time it was incurred and when they had no knowledge that the expense may be shifted to Lynch.[74] Under these circumstances, noting that the cited airfare rule is not completely apposite, I find that this travel expense is reasonable.

### III.   Conclusion

Subject to the specific deductions identified herein, the Application is GRANTED.  The Motion is also GRANTED in total.  Plaintiffs' fee application remains outstanding, as they have yet to submit more detailed statements as requested.[75]  If the parties are not able to resolve Plaintiffs' application within five days and submit an order for a final fee award implementing this decision and that resolution, Plaintiffs shall submit the requested materials.  Once the fee applications are resolved, the Court will enter a final order and judgment.

---

[73] *Underbrink*, 2009 WL 536904, at *5.

[74] *Aveta*, 2010 WL 3221823, at *6.

[75] *See* D.I. 245.

Sincerely,

*/s/Morgan T. Zurn*

Vice Chancellor

MTZ/ms

cc:  All Counsel of Record via *File & ServeXpress*