## IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

UBALDO CESAR,                                    )
                                                 )
    Plaintiff-Below/Appellant,               )
                                                 )
        v.                               )    C.A. No. CPU4-16-000642
                                                 )
JOHN A. MACCONI JR. LLC,                         )
                                                 )
    Defendant-Below/Appellees.               )
                                                 )

Submitted: August 30, 2017
Decided: October 9, 2017

Ubaldo Cesar
P.O. Box 5413
Wilmington, DE 19808
*Plaintiff, Pro Se*

John A. Macconi, Jr., Esquire
John A. Macconi, Jr., LLC
1224 King Street
Wilmington, DE 19801
*Attorney for Defendant*

## DECISION AFTER TRIAL

**SMALLS, C.J.**

Plaintiff-Below/Appellant Ubaldo Cesar ("Plaintiff," "Cesar") brings this appeal pursuant to 10 *Del. C.* §9571 and Court of Common Pleas Rule 72.3, from a decision by the Justice of the Peace Court ("JP") order of February 11, 2016 granting Defendant-Below/Appellee John A. Macconi Jr. LLC ("Defendant," "Macconi") Motion to Dismiss. The JP Court held that the issues involved in this case did not fall within that Court's limited jurisdiction because the issues involve a dispute between former attorney and former client.

On February 25, 2016, Plaintiff filed a Complaint in this Court alleging that Defendant failed to return Plaintiff's money after properly withdrawing from legal representation. Plaintiff alleges that the parties entered into an agreement where Defendant would represent Plaintiff in a civil matter for a flat fee of $5,000.00. Plaintiff avers that he paid Defendant $3,200.00 of the agreed $5,000.00 price prior to the time of Defendant's withdraw. Plaintiff claims Defendant failed to represent him in court, return documents, and refused to reimburse him the $3,200.00, which he seeks in this action. On February 20, 2017, Defendant filed a response to the complaint which he denied the allegations and brought several affirmative defenses.

Trial was held on August 30, 2017 where the Plaintiff and witness Ramonita Aviles testified in support of his case. Plaintiff introduced nine (9) exhibits. Defendant testified and introduced one (1) exhibit. At the conclusion of trial, the Court reserved decision. This is the Court's decision after trial.

## FACTUAL AND PROCEDURAL BACKGROUND

On or about February 18, 2013, Cesar's condominium filed a complaint against Cesar for unpaid condominium fees. On September 12, 2014, Cesar retained Macconi to represent

1

him in the Condominium dispute. Plaintiff introduced as exhibit #2 the retainer agreement where Macconi agreed to represent Cesar for a flat fee of $5,000.00, on a non-hourly basis. The docket in case CPU4-13-000565 *"Linden Green Condominium Ass'n. v. Ubaldo Cesar"* indicates that on September 18, 2014, Macconi entered his appearance on behalf of Cesar. Also on that date the docket reflects that Macconi filed three motions: motion to amend the answer, motion to amend the scheduling order, and motion to continue the trial. On October 23, 2014, Macconi filed a letter with the Court on behalf of both parties requesting a new trial date. Cesar introduced as exhibit #3 an email from Macconi to him dated May 2, 2015, where Macconi was requesting that Cesar contact him to discuss the case because the trial was scheduled for May 12, 2015.

Plaintiff introduced exhibit #4; a series of cancelled checks which reflect payments to Defendant totaling $3,200.00. Plaintiff exhibit #5 is a WSFS bank statement indicating Plaintiff had a loan of $35,083.23 with WSFS bank. Plaintiff exhibit #6 is an email from Defendant to Plaintiff inquiring of the status of how Plaintiff was proceeding with accumulating the documents they previously discussed. Plaintiff exhibit #7 is an email dated May 5, 2015 from Defendant following up on a twenty-five minute telephone conversation with Cesar. This email indicates that the parties have reached an impasse on their attorney/client relationship. Plaintiff exhibit #8 is a collective of two emails between Defendant and the Court regarding trial and the need of Plaintiff to appear. In this email Defendant stated he had a copy of Cesar's email address and that he will call Cesar immediately to follow up with Court dates.

2

On May 5, 2015, Macconi filed a Motion to Withdrawal as Counsel on the basis there had been a lack of communication, responsiveness, and a lack of production for reasonably requested information. Macconi maintains that there is a "fundamental disagreement" between Cesar and himself with respect to how the case should proceed. Moreover, Macconi claims that "representation up to the present time has been unreasonably difficult, but going forward, even with the scheduled trial on May 12, 2015, it would be nearly impossible, at a minimum with respect to his ethical duties to act in Cesar's best interests." Macconi indicated that he filed the motion to withdraw as soon as he learned that there was no chance he and his client could form a solution to their disagreement about how the case should be handled.

On May 8, 2015, Macconi was granted leave to withdraw from the case but was ordered to appear on May 12, 2015, at the trial, to address any notice issues. The trial was scheduled for 9:00 am and at 9:13 am Cesar having failed to appear without notice, the court entered judgment for the Condominium Association, dismissed Macconi and dismissed all counter claims. Cesar subsequently appeared at 9:33 a.m. that morning and moved to vacate the judgment. Cesar argued that Macconi failed to tell him the time of trial, failed to answer his calls, and had retained all his materials he needed to proceed. On May 18, 2015, Macconi advised the court that he left a voicemail and email with Cesar on May 7, 2015 informing him of the trial date and time. Macconi further indicated he received a voicemail from Cesar at 6:30 a.m. on May 8, 2015 confirming his receipt of the call and requesting that Macconi cease all further communication with him.

On Cesar's Motion to Vacate the court found that it was unreasonable to believe that Cesar was not aware of the trial date due to communication provided by Macconi, in writing, on two separate occasions. Furthermore, Cesar was correct that he did not have the documents to move forward in his case but the situation was his own making. Macconi had attempted to return the documents to Cesar at the earlier court proceeding but Cesar failed to appear. In addition, Cesar told Macconi to cease all communications with him before Cesar received the documentation he needed for court. On July 7, 2015 the Motion to Vacate the Judgment was denied.

On February 25, 2016, Cesar filed a complaint against Macconi alleging misrepresentation and demanded he be reimbursed for the funds paid to Macconi for his representation. On February 20, 2017, Defendant filed an answer to the complaint which included affirmative defenses. At trial, Defendant introduced Defense exhibit #1, a document which indicates "Client Billing Escrow Summary" for Cesar's case notwithstanding the representation contract was for a flat fee of $5,000.00.

## PARTIES' CONTENTIONS

When Cesar retained Macconi, he signed an agreement which outlined the legal services Macconi would provide, and the fees and expenses associated with representation. Cesar claims that Macconi failed to provide adequate legal services in his representation. Cesar further claims that Macconi unethically withdrew four (4) days prior to trial. Cesar seeks judgment in the amount of $3,200.00 with interest.

Macconi responds that the agreement to represent Cesar was for a flat fee of $5,000.00 and the amount paid to him from Cesar was for representation commensurate

4

with the work performed. Macconi admits that the total amount paid in increments by Cesar to Macconi as counsel, was $3,200.00. However, Macconi claims that the sum was reasonable based upon the work performed in representing Cesar.

## DISCUSSION

This is a trial *de novo*. Therefore, it is the Court's responsibility to assess the credibility of the testifying witnesses and, where there is a conflict in the testimony, to reconcile these conflicts, "if reasonably possible[,] so as to make one harmonious story."[1] In doing so, the Court takes into consideration the demeanor of the witnesses, their apparent fairness in giving their testimony, their opportunities in hearing and knowing the facts about which they testified, and any bias or interest they may have concerning the nature of the case.[2]

In civil claims, the plaintiff bears the burden to prove each and every element of his or her claims by a preponderance of the evidence.[3] The side which establishes the greater weight of evidence in its favor has met the preponderance standard.[4]

Under the Delaware Rules of Professional Conduct, "In all professional functions a lawyer should be competent, prompt and diligent and should maintain communication with a client concerning the representation."[5] In assessing the reasonableness of attorney's fees, the Court is entitled to exercises its discretion, and in doing so, relies on Rule 1.5 of the Delaware Lawyers' Rules of Professional Conduct for guidance, which sets forth the factors

---

[1] *Nat'l Grange Mut. Ins. Co. v. Nelson F. Davis, Jr., et. al.*, 2000 WL 33275030, at *4 (Del. Com. Pl. Feb. 9, 2000).
[2] *See State v. Westfall*, 2008 WL 2855030, at *3 (Del. Com. Pl. Apr. 22, 2008).
[3] *Reynolds v. Reynolds*, 237 A.2d 708, 711 (Del. 1967).
[4] *Id.*
[5] Del. Lawyers' R. Prof'l Conduct, Preamble.

5

that the Court should consider when deciding whether the fees are reasonable.[6] The factors are as follows:

> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and, (8) whether the fee is fixed or contingent.[7]

In addition to these factors, trial courts also consider "whether the number of hours devoted to litigation was excessive, redundant, duplicative or otherwise unnecessary."[8] This "does not require that this Court examine individually each time entry and disbursement."[9] Moreover, in assessing the reasonableness in attorney's fees, the Court is not required to determine whether attorney's litigation tactics in representing his or her client were appropriate.[10]

Rule 1.5(b) regarding professional conduct of attorneys provides that "The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a

---

[6] *Danenberg v. Fitracks, Inc.*, 58 A.3d 991, 995–96 (Del, Ch.2012) (citing *Mahani v. EDIX Media Gp., Inc.*, 935 A.2d 242, 245 (Del.2007)).
[7] *Manubay v. Stanton Medical Bldg. Cond. Council*, 2000 WL 33275129 (Del.Com.Pl.), citing Delaware Rules of Prof'l Conduct R.1.5(a). (1/3 of controversy reasonable attorney's fees).
[8] *Joseph v. Chacko*, No. CPU4-15-001931, 2016 WL 2931595, at *3 (Del. Com. Pl. May 18, 2016). *See also Mahani*, 935 A.2d at 247–48 (internal quotation marks omitted).
[9] *Danenberg v. Fitracks Inc.*, 58 A.3d 991, 997 (quoting *Aveta. Inc. v. Bengoa*, 2010 WL 3221823, at *6 (Del. Ch.2010); accord *Blank Rome v. Vendel*, 2003 WL 21801179, at *8–9 (Del. Ch.2003) (rejecting alleged requirement of line-item review)).
[10] *Id.*

6

reasonable time after commencing the representation"[11]   "The amount involved in litigation and results obtained are only two of many factors to be considered in determining the reasonableness of an attorney's fee."[12]   The time and effort required to fully litigate a case carries significant weight in the fees apportioned.   "Defendant will not be heard to complain that the time spent preparing for litigation was excessive when he may be blamed for so much of the cost and delay."[13]   In *EDIX Media Grp., Inc. v. Mahani*, the defendant/client was upset at the 169.9 hours his attorney dedicated to trial preparation.  In that case the defendant had requested trial be postponed and was warned by the Court that any harm to the plaintiff could risks imposition of a significant financial judgment against the client.[14] The Court found that the additional hours were the responsibility of the defendant due to his conduct during the trial process.

Turning to the case at hand, Macconi provided Cesar a detailed initial consultant agreement that included representation of the case and the breakdown of the fees involved. Macconi specified that his representation in the lawsuit against Linden Green Condominium, and a possible counter-claim, would cost Cesar $5,000.00.  The fee was further broken down in the letter to include the first payment of $1,200.00, which included a consultant fee of $250.00.  Furthermore, Cesar was to make $500.00 monthly payments to Macconi until paid in full.  Cesar paid the initial $1,200.00 upon signing the agreement and four (4) monthly payments of $500.00 thereafter.  At trial, Macconi provided a time sheet presenting "non-hourly billable hours and escrow summary."  Macconi's escrow summary shows the date,

---

[11] Del. Lawyers' R. Prof'l Conduct 1.5.

[12] Del. Lawyers' R. Prof'l Conduct 1.5(a)(4).

[13] *EDIX Media Grp., Inc. v. Mahani*, No. CIV.A. 2186-N, 2007 WL 417208, at *2 (Del. Ch. Jan. 25, 2007), *aff'd*, 935 A.2d 242 (Del. 2007).

[14] *Id* at 2.

7

hours worked, and tasks performed from September 12, 2014 through May 18, 2015.[15] A review of the evidence, which includes testimony and the exhibits of both parties, indicates that Defendant devoted significant time and efforts to this case by filing motions, seeking continuances, and contacting his client. During Macconi's representation of Cesar he filed several motions, sent numerous emails, conducted several telephone calls, held conferences with Cesar, completed a civil case management order, conducted discovery, prepared answers to interrogatories and requests for production, attended motion hearings, wrote and answered letters, and appeared for trial. These are actions of an attorney which is engaged and actively representing his client. Therefore, the evidence supports that the fees charged are reasonable in accordance with the time Macconi devoted to Cesar's case.

Additionally, Cesar claimed that Mr. Macconi had documents which he needed after Macconi withdrew that were not returned to him in a reasonable time. On May 12, 2015, Macconi represented to the Court that he did not have in his possession any documents of Cesar's. It was eventually determined that Macconi had some photographs and documents that were obtained through discovery. However, I do not find this fact critical to resolution of the issues in this case.

## CONCLUSION

Based on testimony and the exhibits, I find that Macconi represented Cesar diligently for the matter he was retained and the fee was earned.

---

[15] Defendant's exhibit #1.

8

Accordingly, I find that Cesar has failed to prove that Macconi failed to provide effective representation and judgment is entered for the Defendant; each party will bear their own costs.

**IT IS SO ORDERED.**

_____
Alex J. Smalls,
Chief Judge