**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| THE WILLIAMS COMPANIES, INC., | ) | |
| | ) | |
| Plaintiff and | ) | |
| Counterclaim | ) | |
| Defendant, | ) | |
| | ) | |
| v. | ) C.A. No. 12168-VCG | |
| | ) | |
| ENERGY TRANSFER LP, formerly | ) | |
| known as ENERGY TRANSFER | ) | |
| EQUITY, L.P., and LE GP, LLC, | ) | |
| | ) | |
| Defendants and | ) | |
| Counterclaim | ) | |
| Plaintiffs. | ) | |

| | | |
|---|---|---|
| THE WILLIAMS COMPANIES, INC., | ) | |
| | ) | |
| Plaintiff and | ) | |
| Counterclaim | ) | |
| Defendant, | ) | |
| | ) | |
| v. | ) C.A. No. 12337-VCG | |
| | ) | |
| ENERGY TRANSFER LP, formerly | ) | |
| known as ENERGY TRANSFER | ) | |
| EQUITY, L.P., ENERGY TRANSFER | ) | |
| CORP LP, ETE CORP GP, LLC, LE GP, | ) | |
| LLC and ENERGY TRANSFER | ) | |
| EQUITY GP, LLC, | ) | |
| | ) | |
| Defendants and | ) | |
| Counterclaim | ) | |
| Plaintiffs. | ) | |

**MEMORANDUM OPINION**

Date Submitted: May 19, 2022
Date Decided: August 25, 2022

Kenneth J. Nachbar, Susan W. Waesco, and Matthew R. Clark, of MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; OF COUNSEL: Antony L. Ryan, Kevin J. Orsini, Michael P. Addis, and David H. Korn of CRAVATH, SWAINE & MOORE LLP, New York, New York, *Attorneys for Plaintiff and Counterclaim Defendant The Williams Companies, Inc.*

Rolin P. Bissell, James M. Yoch, Jr., and Alberto E. Chávez, of YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware; OF COUNSEL: Michael C. Holmes, John C. Wander, Craig E. Zieminski, and Andy E. Jackson, of VINSON & ELKINS LLP, Dallas, Texas, *Attorneys for Defendants and Counterclaim Plaintiffs Energy Transfer LP, formerly Energy Transfer Equity, L.P.; Energy Transfer Corp LP; ET Corp GP, LLC; LE GP, LLC; and Energy Transfer Equity GP, LLC.*

**GLASSCOCK, Vice Chancellor**

This Memorandum Opinion considers, and grants in full, the Plaintiff's Motion for Entry of an Order and Final Judgment.[1]  It addresses the only remaining issues; the reasonableness of the Plaintiff's fee request, the application of pretrial interest to the underlying contractual breakup fee, and whether such interest should be tolled.[2]  The parties are large entities represented by sophisticated counsel. Assisted by counsel, they entered a contractual arrangement, a merger agreement, that contemplated a merger but also provided for contingencies, including an enforcement/damages action of the kind represented here, which followed a busted merger.  The parties agreed contractually to a fee shifting provision, giving the prevailing party a right to recoup its "reasonable fees and expenses" as determined within this Court's discretion. The first question before me is whether the litigation costs Williams seeks—which after the injunctive-relief segment of this action proceeded under a contingent fee arrangement between Williams and its counsel— include a "reasonable" fee, based on the contingent nature of that fee.  If I were a social scientist,[3] rather than a simple judicial officer, I would note at length the interesting incentives caused by imposing a contingent fee via a fee shifting provision.  Fortunately, I am assisted here by case law, and most pertinently by the

---

[1] *See* The Williams Companies, Inc.'s Mot. Entry Order Final J., Dkt. No. 657 [hereinafter "Pl.'s Mot."].

[2] For the underlying dispute see *Williams Companies, Inc. v. Energy Transfer LP*, 2021 WL 6136723, (Del.Ch., 2021).

[3] Which I am not, and for which I am grateful.

contract entered by the parties themselves. That contract shifts cost to the prevailing party, Williams, but limits recovery to a reasonable fee—I need only determine here that a contingent fee was reasonable to impose it upon ETE. It is worth pointing out that these sophisticated parties surely were aware that post-merger-agreement litigation, seeking a break fee, could likely include representation on a contingent basis. They had every opportunity, therefore, to contract against use of a contingent fee to determine the amount of fees shifted, if they so desired. This, they failed to do. Because I find that Williams' agreement with counsel to a contingent representation was itself reasonable, and that the amount incurred under their agreement is likewise reasonable, I find the contingent fee appropriate under the fee-sifting provision of the merger agreement.

Similarly, I address the question of whether the contractual breakup fee should draw compound interest "from the date such payment was required to be made." Again, while the contract provides for interest, it is silent as to whether that interest should be simple or compound—and again, the parties should have anticipated this issue but chose not to address it. I find that compound interest best fulfills the intent of the award here, to make the Plaintiff whole. I also note that ETE has had the use of the funds to which Williams was entitled, and presumably used these funds for purposes it found advantageous in the interim. Accordingly, I find applying compound interest to the damages award appropriate. I also reject,

for similar reasons, ETE's request to toll interest during a period when trial in the matter was continued. My reasoning is explained below.

## I. BACKGROUND[4]

By way of background, I issued a post-trial Memorandum Opinion on December 29, 2021 awarding a $410 million judgment in favor of the Plaintiff, The Williams Companies, Inc. ("Williams"), as liquidated damages pursuant to a merger agreement (the "Merger Agreement") between Williams and the Defendants, "ETE."[5] The Merger Agreement provided that, if Williams prevailed, it was entitled to recover reasonable attorneys' fees and expenses, as well as prejudgment interest, from ETE:

> [T]he [Defendants] shall pay to the [Plaintiff] . . . the [Plaintiff's] costs and expenses (including reasonable attorneys' fees and expenses) in connection with such suit, together with interest on the amount of such payment from the date such payment was required to be made until the date of payment at the prime rate as published in the *Wall Street Journal* in effect on the date such payment was required to be made.[6]

---

[4] Where the facts are drawn from exhibits jointly submitted at trial, they are referred to according to the numbers provided on the parties' joint exhibit list and with page numbers derived from the stamp on each JTX page ("JTX- __ . ___"). Citations in the form of "Yoch Opp. Ex. —" refer to the exhibits attached to the Transmittal Aff. of James M. Yoch, Jr. Supp. of Defs.' and Countercl. Pls.' Opp'n. Pl.'s Mot. Entry J., Dkt. Nos. 666. Citations in the form of "Ryan Decl. —" refer to the Decl. Antony L. Ryan Supp. Williams' Mot. Entry Order and Final J., Dkt. No. 660, its supporting exhibits, and its appendixes.

[5] *Williams Companies, Inc. v. Energy Transfer LP*, 2021 WL 6136723, at *36 (Del. Ch. Dec. 29, 2021).

[6] JTX-0209.0059 (§5.06(g)).

I also awarded ETE reasonable attorneys' fees and expenses in connection with pursuing certain discovery and a related motion for sanctions.[7] I directed the parties to confer and submit a proposed form of order implementing the Memorandum Opinion.[8]

The parties have reached an impasse regarding three aspects of the proposed implementing order. First, the parties dispute whether Williams' attorneys' fees and expenses are "reasonable."[9] Second, the parties disagree as to whether the contractual prejudgment interest should be simple or compounded quarterly.[10] Finally, the parties dispute whether interest should be tolled for a period during which trial was postponed.[11] For the reasons explained below, I find that Williams' attorneys' fees and expenses were reasonable, and that Williams is entitled to compound interest with no tolling.

## II. ANALYSIS

### A. The Plaintiff's Attorneys' Fees and Expenses Are Reasonable

ETE challenges two aspects of Williams' attorneys' fees and expenses. First, Williams formed a contingent fee agreement with its out-of-state counsel, Cravath, Swaine & Moore ("Cravath"), under which Cravath is entitled to 15% of

---

[7] *Williams Companies*, 2021 WL 6136723, at *36.
[8] *Id.*
[9] *See* Pl.'s Mot. § III; Defs.' and Counterclaim Pls.' Opp. Pl.'s Mot. Entry J. § I, Dkt. No. 664 [hereinafter "Defs.' AB"]; The Williams Companies, Inc.'s Reply Supp. Mot. Entry Order Final J. § I, Dkt. No. 668 [hereinafter "Pl.'s RB"].
[10] Pl.'s Mot. § I; Defs.' AB § III; Pl.'s RB § III.
[11] Pl.'s Mot. § II; Defs.' AB § II; Pl.'s RB § II.

the $410 million judgment, amounting to $74,846,161.32.[12] Cravath and Williams formed the contingent fee agreement partway through the litigation in this matter. Specifically, in mid-2017, Williams' new general counsel, Lane Wilson, approached Cravath to suggest switching from an hourly arrangement to a contingent arrangement.[13] At that time, the Supreme Court had recently affirmed, on March 23, 2017, my opinion declining to enjoin the Defendant from terminating the Merger Agreement,[14] and this action had thus evolved from an injunction case to a damages case. Wilson testified that he wanted to switch to a contingent fee arrangement because he wanted to "align Cravath and Williams [as] partners in this litigation."[15] Cravath and Williams memorialized their contingent fee arrangement in a written agreement dated September 19, 2017.[16]

ETE first contends that shifting the contingent fee in this case is not "reasonable" under the Merger Agreement or Delaware law.[17] ETE also challenges Cravath's "lodestar"—that is, the number of hours Cravath expended in this litigation multiplied by its hourly rate—that supports its contingent fee.[18] As discussed below, I find that both the contingent fee and the lodestar are reasonable.

---

[12] Ryan Decl. ¶¶ 39, 41, and 45; For the fee agreement, see Ryan Decl. Ex. B.
[13] Yoch Opp. Ex. 3, at 43:12–46:18.
[14] *Williams Companies, Inc. v. Energy Transfer Equity, L.P.*, 159 A.3d 264, 266 (Del. 2017).
[15] Yoch Opp. Ex. 3, at 44:13–18.
[16] Ryan Decl. Ex. B.
[17] Defs.' AB § I.A.
[18] *Id.* § I.

## 1. The Contingent Fee Is Reasonable

The Merger Agreement contains no limitation on what kinds of attorneys' fees and expenses may shifted to the losing party, other than a requirement, which is already implied under Delaware law, that the shifted fees and expenses must be "reasonable."[19] The Merger Agreement also designates this Court as the "exclusive jurisdiction" in which all disputes "arising out of or relating to th[e] Agreement" must be brought.[20] The parties thus manifested an intent to shift to the losing party all attorneys' fees and expenses that are "reasonable," as determined by this Court.

At the time the parties signed the Merger Agreement on September 28, 2015, this Court had not yet opined on whether fees based on a percentage of recovery—contingent fees—may appropriately be shifted under a contractual fee shifting provision. But it was well established at that time that this Court applies the eight factors of Rule 1.5(a) of the Delaware Lawyers' Rules of Professional Conduct to evaluate whether the requested fees are reasonable in contractual

---

[19] JTX-0209.0059 (§5.06(g)) ("[T]he [Defendants] shall pay to the [Plaintiff] . . . the [Plaintiff's] costs and expenses (including reasonable attorneys' fees and expenses) in connection with such suit . . . ."); *see also Mahani v. Edix Media Grp., Inc.*, 935 A.2d 242, 245 (Del. 2007) ("Delaware law dictates that, in fee shifting cases, a judge determine whether the fees requested are reasonable.").

[20] JTX-0209.0075 (§8.10(b)).

fee-shifting cases.[21] And it was also well established that there is nothing inherently unreasonable about contingent fees under Rule 1.5(a). Indeed, the eighth factor of Rule 1.5(a) explicitly contemplates contingent fees.[22] The comments to Rule 1.5 advise that "[c]ontingent fees, like any other fees, are subject to the reasonableness standard of paragraph (a) of this Rule," and require that "[i]n determining whether a particular contingent fee is reasonable, or whether it is reasonable to charge any form of contingent fee, a lawyer must consider the factors that are relevant under the circumstances."[23] The parties thus knew at the time they entered into the Merger Agreement that their bargained-for "reasonableness" limitation on fee-shifting did not automatically prohibit contingent fees.

Consistent with Rule 1.5, this Court recently confirmed, in *Shareholder Representative Services LLC v. Shire US Holdings, Inc.*, that "there is nothing inherently unreasonable in enforcing a contractual fee-shifting arrangement to cover a contingent fee award."[24] *Shire* also involved a fee-shifting provision in a merger agreement.[25] During the litigation, the plaintiff and its counsel switched

---

[21] *See, e.g.*, *Mahani v. Edix Media Grp., Inc.*, 935 A.2d 242, 245–46 (Del. 2007); *see also Glob. Link Logistics, Inc. v. Olympus Growth Fund III, L.P.*, 2010 WL 692752, at *1 (Del. Ch. Feb. 24, 2010).
[22] Del. Lawyers' R. Prof'l Conduct R. 1.5(a).
[23] *Id.* R. 1.5 cmt. 3.
[24] 2021 WL 1627166, at *2 (Del. Ch. Apr. 27, 2021), *aff'd*, 267 A.3d 370 (Del. 2021).
[25] *See S'holder Representative Servs. LLC v. Shire US Holdings, Inc.*, 2020 WL 6018738, at *28 (Del. Ch. Oct. 12, 2020), *aff'd*, 267 A.3d 370 (Del. 2021).

7

from an hourly fee arrangement to a one-third contingent fee arrangement because the plaintiff was struggling to fund the litigation.[26]  In finding the contingent fee reasonable, the Court reasoned that "[r]isk-taking of this nature is a normal part of litigation," and "[a] one-third contingent fee arrangement is quite typical and commercially reasonable."[27]  The Court stressed that "[the defendant] could have contracted in the [m]erger [a]greement to avoid this outcome.  It did not."[28]

As in *Shire*, the fee-shifting provision in the Merger Agreement here contains no prohibition on the shifting of contingent fees.  And the contingent fee Williams agreed to, at 15%, is far below the 33% contingent fee approved in *Shire* and well within the range of contingent fees that have been approved as reasonable by this Court.[29]

ETE attempts to distinguish *Shire* because the plaintiffs there were stockholders who struggled to fund the litigation without a contingent fee.[30]  ETE correctly points out that the *Shire* Court noted that "[r]isk-taking of this nature is a normal part of litigation, which Delaware public policy seeks to reward *when it*

---

[26] *Shire*, 2021 WL 1627166, at *1.
[27] *Id.* at *2.
[28] *Id.*
[29] *See Americas Mining Corp. v. Theriault*, 51 A.3d 1213, 1260 & n.114 (Del. 2012) ("'A study of recent Delaware fee awards finds that the average amount of fees awarded when derivative and class actions settle for both monetary and therapeutic consideration is approximately 23% of the monetary benefit conferred; the median is 25%.'  Higher percentages are warranted when cases progress to a post-trial adjudication.").
[30] Defs.' AB § I.A.

*benefits stockholders*."[31]  In contrast, ETE contends, Williams was not pursuing this litigation as a stockholder, and it has presented no evidence that it struggled to fund this litigation, meaning that "it does not fall into the public policy reasons" articulated in *Shire*.[32]  I do not find that to be a principled basis to distinguish *Shire*.  In *Shire*, the plaintiff made a business judgment to switch to a contingent fee because it could not otherwise fund the litigation; here, Williams' general counsel likewise made a business judgment to switch to a contingent fee to "align Cravath and Williams [as] partners in this litigation."[33]  This case, I note, had recently changed from one seeking injunctive relief (which called for non-contingent representation) to one seeking recovery of the break fee (for which contingent representation was a business option).

Although "there is nothing inherently unreasonable in enforcing a contractual fee-shifting arrangement to cover a contingent fee award,"[34] the decision to switch mid-litigation from an hourly arrangement to a contingent arrangement may, in some circumstances, be unreasonable.  For instance, where the litigation has progressed significantly, if uncertainty regarding the outcome begins to fall away, it may be unreasonable for a party to then switch to a contingent fee in an attempt to penalize a party opponent.  But that consideration is

---

[31] *Shire*, 2021 WL 1627166, at *2.
[32] Tr. 5.19.22 Oral Arg. re Mot. Entry Order and Final J. 33:21–35:1, Dkt. No. 676.
[33] Yoch. Opp. Ex. 3, at 43:23–46:9.
[34] *Shire*, 2021 WL 1627166, at *2.

not present here. To the contrary, the record reflects that, shortly after the Supreme Court affirmed my post-trial opinion in the injunction phase of this litigation, Williams' new general counsel decided to switch to a contingent fee for the damages phase because he thought it would align Williams and Cravath.[35]

Accordingly, I find no reason to part from the Court's holding in *Shire* enforcing a contractual fee-shifting provision to cover a contingent fee. I find the particular contingent fee arrangement here to be reasonable.

### 2. Williams' Lodestar Is Reasonable

ETE also takes issue with the "lodestar" that Williams used to support its contingent fee. A "lodestar" is the "hours reasonably expended" multiplied by "a reasonable hourly rate," "which can then be adjusted through the application of a 'multiplier,' to account for additional factors such as the contingent nature of the case."[36]

Williams has produced a lodestar of $47,116,996.73.[37] Comparing Williams' contingent fee to its lodestar yields a lodestar multiple of 1.7x.[38] A 1.7x

---

[35] *See supra* note 15 and accompanying text.
[36] *Americas Mining Corp. v. Theriault*, 51 A.3d 1213, 1253 (Del. 2012).
[37] Pl.'s Mot. § III.B.
[38] *Id.*

10

lodestar multiple is well within the range of what this Court has deemed reasonable.[39]

With respect to the lodestar itself, ETE contends that Cravath expended an unreasonable number of hours in this litigation, and that Williams failed to review Cravath's bills to ensure compliance with Williams' billing policies after they switched to a contingent arrangement.[40] I disagree. First, the record reflects that Williams continued to review Cravath's bills after the switch from an hourly to a contingent arrangement.[41] And even before the switch, Williams only objected to "under 1 percent . . . of the amount billed" by Cravath.[42] Thus, although Williams did not review Cravath's bills with the same degree of scrutiny after switching to a contingent arrangement,[43] ETE has presented no reason to suggest that any potential write-downs after the switch would be material. Indeed, Cravath had every incentive to work efficiently, given that its compensation was not based on hours billed. In other words, *Cravath* bore the cost of any unnecessary litigation expense, without the opportunity to pass that through to a client.

---

[39] *See Shire*, 2021 WL 1627166, at *3 ("multiplier of approximately 2.5x" was "on par with or less than awards this court has previously deemed reasonable in the post-trial or advanced-stage litigation context").

[40] Defs.' AB § I.B.

[41] Yoch Opp. Ex. 3, at 87:15–89:18.

[42] *Id.* Ex. 4, at 36:8–20; *see also* Ryan Decl. App. B, at 2 (showing $30,972.75 written-down on $4,358,372.70 paid).

[43] Yoch Opp. Ex. 3, at 88:11–89:25.

Second, ETE's challenge to Cravath's rates and hours is premised on a comparison between Cravath and ETE's counsel, Vinson & Elkins.[44] For instance, ETE points out that Cravath expended 81,864.8 hours, while Vinson & Elkins expended only 34,700.3.[45] But "any attempt to measure reasonableness by simple comparison of the opposing parties' lawyers' bills is inadequate,"[46] particularly in a case that imposed "asymmetric burdens" on either side.[47] ETE does not dispute that Williams produced approximately ten times as many documents as ETE in this action.[48] ETE has pointed to nothing that persuades me that the amount of hours expended by Cravath in this litigation is unreasonable. I find the time expended— again, used only as a proxy to measure the reasonableness of the contingent fee— reasonable.

ETE likewise notes that Cravath's hourly rate "is the highest of any counsel in this action," averaging $624.04 per hour, compared to Vinson & Elkins' own humble hourly rate of $472.60.[49] But ETE offers nothing to suggest that the rates Cravath used in its lodestar calculation were above the rates that the market would bear for Cravath's services. Nor could it: those rates reflected a discount and a rate

---

[44] Defs.' AB § I.B.
[45] *Id.*
[46] *Bellmoff v. Integra Servs. Techs., Inc.*, 2018 WL 3097215, at *3 (Del. Super. Ct. June 22, 2018).
[47] *Cf. Danenberg v. Fitracks, Inc.*, 58 A.3d 991, 999 (Del. Ch. 2012).
[48] *See* Pl.'s Mot. § III.B; Defs.' AB § I.B.
[49] Defs.' AB § I.B.

freeze from what Cravath customarily charges.[50]  I find Cravath's hourly rates to be reasonable.

Accordingly, I find that the $47,116,996.73 lodestar Cravath used to support its contingent fee is reasonable, and the fees and expenses award sought likewise reasonable.

*B. The Plaintiff is Entitled to Compound Interest*

The parties to the merger agreement stipulated to an award of prejudgment interest; they dispute whether Williams is entitled to quarterly compound, or merely simple, prejudgment interest under the Merger Agreement's fee shifting provision.  As with the ability to shift contingent fees, the Merger Agreement is silent with respect to whether interest should be compound or simple.[51]  But the parties agreed to submit any dispute arising out of the Merger Agreement to the exclusive jurisdiction of this Court,[52] and this Court has the discretion, in the absence of a provision to the contrary, to award either compound or simple prejudgment interest.[53]  Accordingly, by staying silent with respect to how interest

---

[50] Ryan Decl. ¶¶ 38, 48.  *See Comrie v. Enterasys Networks, Inc.*, 2004 WL 936505, at *4 (Del. Ch. Apr. 27, 2004) (rates reasonable where "[t]he plaintiffs received a 10% 'courtesy discount'" and "[t]he lead partner on the plaintiffs' case kept his hourly rate constant following inception of representation, notwithstanding two subsequent increases in his hourly rate for new matters").
[51] *See* JTX-0209.0059 (§5.06(g)).
[52] JTX-0209.0075 (§8.10(b)).
[53] *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 173 (Del. 2002) (recognizing "the discretion of the Court of Chancery to award compound interest").

should be calculated and agreeing to submit the matter to this Court, the parties manifested an intent to leave that determination to the discretion of this Court.

In my discretion, I find that prejudgment interest should be compounded quarterly. "Prejudgment interest serves two purposes: first, it compensates the plaintiff for the loss of the use of his or her money; and, second, it forces the defendant to relinquish any benefit that it has received by retaining the plaintiff's money in the interim."[54] In the context of sophisticated commercial parties, "[c]ompanies neither borrow nor lend at simple interest rates."[55] Instead, compound interest more accurately reflects the "fundamental economic reality" that "[c]ompound interest is 'the standard form of interest in the financial market.'"[56] Indeed, "even passbook savings accounts now compound their interest daily."[57] It is thus "hard[] to imagine a corporation today that would seek simple interest on the funds it holds."[58] By not promptly paying, ETE—not Williams— has retained use of the $410 million breakup fee. The parties did not pluck $410 million from the ether; this amount represents Williams' out-of-pocket cost should

---

[54] *Brandywine Smyrna, Inc. v. Millennium Builders, LLC*, 34 A.3d 482, 486 (Del. 2011).
[55] *Glidepath Ltd. v. Beumer Corp.*, 2019 WL 855660, at *26 (Del. Ch. Feb. 21, 2019).
[56] *ONTI, Inc. v. Integra Bank*, 751 A.2d 904, 926 & n.88 (Del. Ch. 1999), *as revised* (July 1, 1999).
[57] *Id.* at 926.
[58] *Id.*

14

the merger fail.[59]  The merger did fail, and Williams has been without the use of *its*

money.  Accordingly, I find that compound interest is appropriate here because it

more accurately reflects the economic realities of the parties.  Williams is entitled

to prejudgment interest, compounded quarterly.

### C. Tolling of Prejudgment Interest is Not Appropriate

ETE contends that interest should be tolled for the period during which the

trial in this action was delayed.[60]  Specifically, trial was initially delayed because of

an inadvertent error made by Williams' discovery vendor.[61]  The trial was then

further delayed because of the COVID-19 pandemic.[62]  ETE contends that interest

must be tolled during the entire period of delay because Williams is the "but for"

cause of all the delays.[63]  Absent the discovery error, says ETE, trial would have

occurred before the COVID-19 pandemic.[64]

I decline to toll interest.  Although this Court has the discretion to reduce

prejudgment interest for "delay that is the 'fault' or 'responsibility' of a plaintiff or

---

[59] To enter the merger with ETE, Williams was forced to withdraw from another transaction which bore a $410 million termination fee, JTX-1218.0130. For a more detailed discussion of the transactions, see *Williams*, 2021 WL 6136723, at *2–3.

[60] Defs.' AB § II.

[61] Letter to Vice Chancellor Glasscock from Kenneth J. Nachbar Regarding Electronic Disc. Vendor Error, Which Parties Believe Requires Extension Case Schedule, Dkt. No. 407.

[62] Judicial Action Form Completed by Dennel Niezgoda, Ct. Rep., Dkt. No. 500, Granted (Stipulation and [Proposed] Third Am. Order Governing Case Schedule), Dkt. No. 502, Judicial Action Form Completed by Dennel Niezgoda, Ct. Rep., Dkt. No. 528, Granted (Stipulation and [Proposed] Forth Am. Order Governing Case Schedule), Dkt. No. 551, and Judicial Action Form Completed by Jeanne Cahill, Ct. Rep., Dkt. No. 594.

[63] Defs.' AB § II.

[64] *Id.*

his attorney,"[65] such a reduction is typically reserved for situations involving "inordinate" or deliberate delay.[66] Here, the discovery error was inadvertent, made by a third-party vendor, and was remedied within six months.[67] And Williams had nothing to do with the subsequent delays caused by COVID-19.

A prejudgment interest award is designed to "address the lost time value of money."[68] ETE, not Williams, had the use of Williams' $410 million judgment during the entirety of this litigation; ETE's use of those funds was not tolled during the period of delay. I find no reason to toll interest here.

### III. CONCLUSION

For the foregoing reasons, I find that the contingent fee is reasonable under the Merger Agreement's fee-shifting provision and under Delaware law. I also find that Williams is entitled to pre-judgment interest, compounded quarterly, with no tolling of interest. The parties should submit a proposed form of order implementing the Memorandum Opinion dated December 29, 2021 and this Memorandum Opinion.

---

[65] *Bishop v. Progressive Direct Ins. Co.*, 2019 WL 2009331, at *5 (Del. Super. Ct. May 3, 2019).

[66] *See Moskowitz v. Mayor & Council of Wilmington*, 391 A.2d 209, 211 (Del. 1978) ("[W]here there has been an inordinate delay the Court may take into consideration all of the actions of the parties and apportion fault for any delay, thereby reducing the interest due in accordance with the degree of the plaintiff's or his attorney's responsibility for the delay."); *See Wacht v. Cont'l Hosts, Ltd.*, 1994 WL 728836, at *2 (Del. Ch. Dec. 23, 1994) (reducing interest because plaintiff waited "nearly a decade to bring" "garden variety" case to trial, which was preceded "by long periods of inactivity, with only fitful legal skirmishes occasioned mainly by motions . . . filed by defendants").

[67] Ryan Decl. ¶¶ 20–21, 23.

[68] *See Buckeye Partners, L.P. v. GT USA Wilmington, LLC*, 2020 WL 2551916, at *10 (Del. Ch. May 20, 2020).

16

To the extent the foregoing requires an Order to take effect, IT IS SO ORDERED.