# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

DEAN P. BELLMOFF, AND  )
BEATRICE E. SALAZAR,  )
                              )
            Plaintiffs,  )
                              )
v.  )      C.A. No. N17C-10-312 PRW CCLD
                              )
INTEGRA SERVICES  )
TECHNOLOGIES, INC.,  )
                              )
            Defendant.  )

Submitted: March 26, 2018
Decided: June 22, 2018

*Upon Plaintiffs Dean P. Bellmoff and Beatrice E. Salazar's*
*Request for Attorney's Fees,*
**GRANTED**.

## MEMORANDUM OPINION AND ORDER

Todd C. Schiltz, Esquire, Stephen S. Herst, Esquire, Drinker Biddle & Reath LLP, Wilmington, Delaware, Attorneys for Plaintiffs.

Garvan F. McDaniel, Esquire, Hogan McDaniel, Wilmington, Delaware, Ronald R. Rossi, Esquire (*pro hac vice*), Kasowitz Benson Torres LLP, New York, New York, Attorneys for Defendant.

**WALLACE, J.**

## I. INTRODUCTION

Plaintiffs Dean P. Bellmoff and Beatrice E. Salazar (together, "Bellmoff and Salazar") move this Court to grant their request for attorney's fees in the amount of $41,110.54. Defendant Integra Services Technologies, Inc. ("Integra") counters that Bellmoff and Salazar are entitled to no more than $34,994.96 in attorney's fees.

## II. FACTUAL AND PROCEDURAL BACKGROUND

This issue arises from an underlying contract dispute recently resolved by this Court. In August 2015, Bellmoff, Salazar, and Integra entered into a Share Purchase Agreement: in exchange for selling, assigning, and transferring certain Integra stock to Integra, Bellmoff and Salazar would each receive both a cash payment at the closing of the transaction and a promissory note in the amount of $1,450,000 (the "Notes").[1]

Under each Note's terms, Integra was to pay the remaining principal in three installments with accrued interest on the Notes' unpaid balance.[2] Integra made the first principal and interest payments to Bellmoff and Salazar on or about August 12, 2016.[3] Integra then informed Bellmoff and Salazar that it would pay the second

---

[1]     This committed Integra to pay Bellmoff and Salazar a remainder principal of $2,900,000 under the Notes. Compl. ¶ 6.

[2]     *Id.* at ¶ 8.

[3]     *Id.* at ¶ 9.

accrued interest sum due on August 12, 2017, but it would not tender the second principal installment until October 2, 2017.[4] Bellmoff and Salazar granted this extension, but Integra failed to make the required Note payments under the new deadline.[5]

Because of Integra's failure to pay the delinquent amounts, Bellmoff and Salazar filed a Complaint against Integra on October 25, 2017, alleging breach of the Share Purchase Agreement. Integra filed an Answer raising several affirmative defenses. Bellmoff and Salazar then brought a Motion for Judgment on the Pleadings. Bellmoff and Salazar requested an order granting judgment in their favor against Integra; Integra opposed, saying material questions of fact remained.

This Court held argument on Bellmoff and Salazar's Motion for Judgment on the Pleadings in mid-February 2018. At the hearing, the Court ruled in Bellmoff and Salazar's favor on Integra's liability and damages and reserved judgment on the issue of reasonable attorney's fees.

A week later, the Court issued an Order (the "Order") directing Integra to pay all costs of collection that Bellmoff and Salazar have incurred as a result of Integra's breach of the Notes. This was required under the Notes' cost-shifting provision.[6]

---

[4]     Compl. ¶ 11.

[5]     *Id.* at ¶ 12.

[6]     Order, *Bellmoff v. Integra Servs. Techs., Inc.*, C.A. No. 17C-10-312 PRW [CCLD] (Del. Super. Ct. Feb. 22, 2018).

The Order also directed that the parties meet and confer on payment of attorney's fees to see if they could agree on what amount of fees would be reasonable.[7]

The parties have attempted, unsuccessfully, to reach an agreement on attorney's fees. Bellmoff and Salazar now request the Court adjudge the proper amount of reasonable attorney's fees to be $41,110.54.[8] Integra opposes Bellmoff and Salazar's request, asking the Court to award something less.[9]

## III. STANDARD OF REVIEW

"In an action at law, a court may not order the payment of attorney's fees as part of costs to be paid by the losing party unless the payment of such fees is authorized by some provision of statute or contract."[10] But when an award of attorney's fees is warranted, the Court "should look to the eight-factor test set forth in the Delaware Lawyers' Rule of Professional Conduct 1.5(a) [to] assess[] the reasonableness of [that] fee award."[11] Rule 1.5(a) prescribes the following factors:

---

[7]     Order ¶ 2.

[8]     *See* Aff. of Todd C. Schiltz, Esq., *Bellmoff v. Integra Servs. Techs., Inc.*, C.A. No. 17C-10-312 PRW [CCLD] (Del. Super. Ct. Mar. 15, 2018) (hereinafter "Schiltz Aff.").

[9]     Def.'s Opp. to Pls.' Attorney's Fees Request, *Bellmoff v. Integra Servs. Techs., Inc.*, C.A. No. 17C-10-312 PRW [CCLD] (Del. Super. Ct. Mar. 26, 2018) (hereinafter "Def.'s Opp.").

[10]     *Casson v. Nationwide Ins. Co.*, 455 A.2d 361, 370 (Del. Super. Ct. 1982).

[11]     *Mine Safety Appliances Co. v. AIU Ins. Co.*, 2014 WL 4724804, at *2 (Del. Super. Ct. Sept. 19, 2014).

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.[12]

When using these factors, the Court should consider "whether the number of hours devoted to litigation was 'excessive, redundant, duplicative or otherwise unnecessary.'"[13] Too, the Court should consider the terms of any fee agreement between the law firm and the requesting client. Because, while "[f]ee agreements cannot absolve the Court of its duty to determine a reasonable fee," "an arm's-length

---

[12] DEL. RULES OF PROF'L. CONDUCT R. 1.5(a) (2018).

[13] *Mahani v. Edix Media Grp., Inc.*, 935 A.2d 242, 247 (Del. 2007) (quoting *All Pro Maids, Inc. v. Layton*, 2004 WL 3029869, at *5 (Del. Ch. Dec. 20, 2004), aff'd, 880 A.2d 1047 (Del. 2005)).

agreement, particularly with a sophisticated client, . . . can provide an initial 'rough cut' of a commercially reasonable fee."[14]

## IV. DISCUSSION

Bellmoff and Salazar suggest that the fees they request, totaling $41,110.54, are accurate and reasonable. Integra complains that Bellmoff and Salazar's charged fees are excessive in comparison to Integra's own legal costs, $31,851.54. In turn, Integra says, the Court should award no more than $34,994.96—Bellmoff and Salazar's requested amount reduced by 15%.

Bellmoff and Salazar have submitted an affidavit of costs and fees broken down by each of their attorneys' activities related to the suit.[15] Bellmoff and Salazar request $41,110.54 for 68.1 total hours of their attorneys' work. Integra counters that Plaintiffs only needed to spend $31,851.84 for 56.8 total hours of legal work—the same amount Integra paid its attorneys to defend here.

"Determining reasonableness of amounts sought [] does not require the Court to assess independently whether counsel appropriately pursued and charged for a particular motion, line of argument, area of discovery, or other litigation tactic. 'For a Court to second-guess, on a hindsight basis, an attorney's judgment . . . is

---

[14]     *Wis. Inv. Bd. v. Bartlett*, 2002 WL 568417, at *6 (Del. Ch. Apr. 9, 2002), aff'd, 808 A.2d 1205 (Del. 2002).

[15]     *See* Schiltz Aff.

hazardous and should whenever possible be avoided.'"[16] "The party seeking fees carries its burden to justify a challenged litigation decision by showing that 'the services . . . rendered [were] thought prudent and appropriate in the good faith professional judgment of competent counsel.'"[17]

And, as Delaware courts have observed, any attempt to measure reasonableness by simple comparison of the opposing parties' lawyers' bills is inadequate. The Court of Chancery's treatment of this issue helps here.

In *Danenberg v. Fitracks, Inc.*, Plaintiff Danenberg sought $292,019.91 in fees and costs incurred in an underlying Chancery action.[18] Defendant Fitracks, Inc. ("Fitracks") sought a reduction, complaining that Danenberg could not have reasonably incurred the amount sought when, in the same underlying action, Fitracks's parent company incurred only $85,125 in expenses.[19]

---

[16]    *Danenberg v. Fitracks, Inc.*, 58 A.3d 991, 997 (Del. Ch. 2012) (quoting *Arbitrum (Cayman Islands) Handels AG v. Johnston*, 1998 WL 155550, at *4 (Del. Ch. Mar. 30, 1998)).

[17]    *Id.* (quoting *Delphi Easter P'rs Ltd. P'ship v. Spectacular P'rs, Inc.*, 1993 WL 328079, at *9 (Del. Ch. Aug. 6, 1993)).

[18]    *Id.* at 998.

[19]    *Id.*

Citing the Pizza Principle—"it is more time-consuming to clean up the pizza thrown at the wall than it is to throw it"[20]—the Court of Chancery disagreed and found in Danenberg's favor:

> At bottom, Fitracks objects not to the rates that Danenberg's counsel has charged, nor to the amounts billed for particular tasks, but rather to the overall quantum of work that Danenberg's counsel performed. This objection asks the Court to second-guess the judgment of Danenberg's counsel, something the Court is loath to do. Danenberg has carried his burden by showing that the services rendered were thought prudent and appropriate in the good faith professional judgment of competent counsel.[21]

The difference in total fees incurred by each party here (a little over $9,000) is far less than that in *Danenberg* (more than $200,000). And that difference here derives from an 11-hour gap in each legal team's time spent working on the case. No doubt, Bellmoff and Salazar's counsel had to spend time cleaning up Integra's thrown pizza: reviewing and responding to each of the affirmative defenses Integra chucked in to the litigation.[22]

---

[20] *Danenberg*, 58 A.3d at 998 (quoting *Auriga Capital Corp. v. Gatz Props., LLC*, 40 A.3d 839, 882 n.184 (Del. Ch. 2012)).

[21] *Id.* at 1000.

[22] *See* Schiltz Aff. at 13–17 (citing 21.8 hours spent responding to Integra's Answer: 0.9 hours spent reviewing the Answer; 8.6 hours researching Bellmoff's Motion for Judgment on the Pleadings and the effects Integra's affirmative defenses might have on the motion; 9.0 hours researching the affirmative defenses specifically; and 3.3 hours preparing for oral argument on the issues); Def.'s Opp., Ex. A at 1–3 (citing 12.4 hours spent on the same issues: 4.40 hours drafting

The Court will not examine each hour spent on the case through the lens of hindsight. Bellmoff and Salazar have carried the burden of showing that the services rendered were thought prudent and appropriate at the time, in the good faith professional judgment of counsel. In sum, their counsel successfully secured a million-dollar award and charged less than 5% of that sum to do so. Not bad. Certainly not unreasonable. The Court therefore finds Bellmoff and Salazar's requested fees wholly reasonable, and awards attorney's fees in the amount of $41,110.54.[23]

**IT IS SO ORDERED.**

Paul R. Wallace, Judge

---

the Answer and affirmative defenses; 2.00 hours reviewing the Answer; 4.50 hours to edit the Answer; and 1.50 hours preparing for oral argument).

[23] Bellmoff and Salazar may, under the Notes' cost-shifting provision, also collect the now-additional costs and fees incurred for their counsel's time spent battling this wholly reasonable attorney's fees request.