**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| MARC KIELER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2025-0150-DG |
| | ) | |
| LEND ME IT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING DEFENDANT'S MOTION FOR RELIEF
FROM JUDGMENT AND PARTIALLY RESOLVING
THE FEE REQUEST OF DANIEL A. O'BRIEN**

**WHEREAS:**

A.    On February 12, 2025, Plaintiff filed his Verified Complaint Under 8 *Del. C.* § 220 ("Complaint") to inspect Defendant's books and records.[1]

B.    On February 24, Plaintiff's counsel informed the Court via letter that they had contacted Defendant's California counsel, Plante Huguenin Lebovic Kahn LLP ("PHLK"), three days earlier.[2]  PHLK responded to Plaintiff, and informed them Defendant was in the process of retaining Delaware counsel.[3]

---

[1] Dkt. 1.

[2] Dkt. 7.

[3] *Id.*

C.      On March 5, the Court directed Plaintiff to file a status report based on the counsel's representations in the February 24 letter.[4]  Plaintiff responded two days later, and informed the Court that Defendant "produced limited documents" in response to Plaintiff's demand, but that the production remained deficient.[5]  Plaintiff also stated it reserved the right to file a motion for default judgment if Defendant's counsel did not appear.[6]

D.      On April 3, Plaintiff filed his Motion for Entry of Default Judgment Against Defendant ("MDJ").[7]  Plaintiff also alleges that Defendant produced additional documents on April 9.[8]

E.      On June 6, the Court granted the MDJ ("Order").[9]  Plaintiff served the Order on Defendant, and alleges that PHLK and Plaintiff's counsel met and conferred on June 17.[10]

F.      On June 23, Defendant's counsel entered their appearance[11]  and informed the Court via letter that Defendant intended to either take exceptions

---

[4] Dkt. 6.

[5] Dkt. 7.

[6] *See id.*

[7] Dkt. 8.

[8] Dkt. 21 ¶ 11.

[9] Dkt. 10.

[10] Dkt. 21 ¶ 14.

[11] Dkt. 11.

to the Court's entering default against Defendant or move to vacate the judgment under Court of Chancery Rule 60(b).[12]

G.      On June 24, Plaintiff's counsel filed the Affidavit of Daniel A. O'Brien Pursuant to Rule 88 ("Rule 88 Affidavit").[13]  In the Rule 88 Affidavit, Plaintiff's counsel seeks $262,289.75 in fees and costs incurred with this matter, for "more than 293.3 hours of work in connection with" this dispute.[14]

H.      On July 1, Defendant filed its Motion for Relief From Judgment ("Motion").[15]  In the Motion, Defendant argued that relief was warranted because of excusable neglect, and that Defendant already satisfied Plaintiff's demand.[16]

I.      On July 18, Plaintiff filed his Opposition to the Motion.[17] Defendant filed its reply on August 1.[18]

**IT IS ORDERED**, this 30th day of October, 2025, that:

1.      The Motion is DENIED and Plaintiff's request for fees is DENIED IN PART.

---

[12] Dkt. 12; Ct. Ch. R. 60(b).

[13] Dkt. 13.

[14] *Id.* ¶¶ 5, 36.

[15] Dkt. 15.

[16] *Id.* ¶¶ 44, 47–48, 51–54.

[17] Dkt. 21.

[18] Dkt. 27.

2.      Court of Chancery Rule 60(b) permits the Court to "relieve a party or a party's legal representative from a final judgment, order, or proceeding for mistake . . . or excusable neglect . . . [or if] the judgment has been satisfied . . . or it is no longer equitable that the judgment should have prospective application[.]"[19]

3.      "There are two significant values implicated by Rule 60(b). The first is ensuring the integrity of the judicial process and the second, countervailing, consideration is the finality of judgments."[20]  "Because of the significant interest in preserving the finality of judgments, Rule 60(b) motions are not to be taken lightly or easily granted."[21]

4.      In the Motion, Defendant asserts relief from the default judgment is warranted for two reasons.  First, Defendant contends that its failure to respond to the Complaint was a result of "excusable neglect."[22]  Second, Defendant argues that continued enforcement of the default is inequitable and a manifest injustice because of "a significant change in the factual conditions

---

[19] Ct. Ch. R. 60(b).

[20] *MCA, Inc. v. Matsushita Elec. Indus. Co., Ltd.*, 785 A.2d 625, 634 (Del. 2001) (citing *Credit Lyonnais Bank Nederland, N.V. v. Pathe Comm. Corp., et al.*, 1996 WL 757274, at *1 (Del. Ch. Dec. 20, 1996)).

[21] *MCA, Inc.*, 785 A.2d at 635 (citing *Metlyn Realty Corp. v. Esmark, Inc.*, 763 F.2d 826, 830 (7th Cir. 1985)).

[22] Dkt. 15 ¶¶ 44–50.

that were unknown by the Court at the time of the judgment[:]" Defendant satisfied the Order.[23] I address each of these in turn.

**Defendant's Default was not the Result of Excusable Neglect.**

5. Defendant first claims that its failure to participate in this action was excusable neglect because it "believed it had already complied with Plaintiff's demands"[24] and that, because Delaware public policy favors resolving cases on their merits, the Court should grant the relief it seeks.[25]

6. "When a default judgment results from a defendant's failure to respond, Delaware courts will err on the side of granting relief to promote the policy of deciding litigation on the merits."[26]

7. "To prevail under Rule 60(b)(1), the defendant must establish (i) mistake, inadvertence or excusable neglect in the conduct that led to the default judgment; (ii) a meritorious defense to the action that would allow for a different outcome to the litigation; and (iii) that the plaintiff will not be prejudiced."[27]

---

[23] Dkt. 15 ¶¶ 51–54, 56.

[24] *Id.* at ¶ 44.

[25] *Id.* at ¶ 40 (quoting *Word v. Balakrishnan*, 2004 WL 780134, at *3 (Del. Super. Apr. 13, 2004)).

[26] *OneWest Bank, F.S.B. v. Feeney*, 2013 WL 5977066, at *3 (Del. Ch. June 27, 2013) (citing *Battaglia v. Wilm. Sav. Fund Soc.*, 379 A.2d 1132, 1135 n.4 (Del. 1977)).

[27] *CanCan Dev., LLC v. Manno*, 2011 WL 4379064, at *3 (Del. Ch. Sep. 21, 2011).

8. "Because the first element is a threshold requirement, this Court will only consider the second and third factors if the defendants can give a satisfactory explanation for failing to answer the complaint, such as excusable neglect or inadvertence."[28]

9. Excusable neglect is defined as "neglect which might have been the act of a reasonably prudent person under the circumstances."[29] But a default judgment will not be vacated where a defendant "'has simply ignored the process.'"[30] Further, a "mere showing of negligence or carelessness without a valid reason may be deemed insufficient."[31]

10. To support its contentions, Defendant relies on this Court's opinion in *Rivest v. Hauppauge Digital, Inc.*[32]

11. In *Rivest*, the Court granted a motion to vacate a default judgment in a books and records action where the defendant corporation failed to

---

[28] *In re Stokes v. Stokes*, 2025 WL 1837362, at *3 (Del. Ch. July 2, 2025) (quoting *Deutsche Bank Nat'l Tr. Co. v. Vleugels*, 2017 WL 2124425, at *2 (Del. Ch. May 10, 2017)).

[29] *Glass v. Baker*, 2022 WL 2048436, at *2 (Del. Ch. June 6, 2022) (quoting *OneWest Bank*, 2013 WL 5977066, at *3).

[30] *Deutsche Bank*, 2017 WL 2124425, at *2 (quoting *OneWest Bank*, 2013 WL 5977066, at *3).

[31] *Dishmon v. Fucci*, 32 A.3d 338, 346 (Del. 2011) (quoting *DiSabatino v. DiSabatino*, 922 A.2d 414 (Del. 2007) (TABLE)).

[32] 2020 WL 443842 (Aug. 3, 2020).

appear.[33] The defendant's counsel entered their appearance after the Court entered the default and moved for relief from the judgment.[34] The defendant claimed it made a good faith effort to respond, but that the employee responsible for responding to the demand was furloughed due to COVID-19, its layperson CEO mistakenly believed he could respond on the defendant's behalf, and the CEO's response was received one day after the default was entered.[35] Additionally, the Court's procedures were altered in response to the pandemic, and the unusual circumstances made the notice the defendant received confusing and, potentially, misleading about how defendant should respond.[36]

12. The antecedent circumstances culminating in the Court's decision in *Rivest* are not present here. Plaintiff served the Complaint on Defendant's counsel. Presumably, an attorney would know that Defendant needed to respond to the Complaint in some manner.[37] And it appears PHLK

---

[33] *Rivest*, 2020 WL 443842, at *1.

[34] *Id.*

[35] *Id.*

[36] *Id.* at *1, *3.

[37] *Compare* Ct. Ch. R. 12(a)(1)(A) *with* Fed. R. Civ. Proc. 12(a)(1)(A).

was aware that defendant needed to retain Delaware counsel to respond to the Complaint.[38]

13.   Plaintiff also served the MDJ on Defendant.[39]   This plainly indicates that Plaintiff did not believe Defendant satisfied the demand with its initial production, and that future proceedings would take place in this Court. Defendant's position also makes little sense because there is no evidence that Plaintiff represented to Defendant that he would agree to dismiss his complaint following Defendant's initial productions.

14.   Further, Defendant's attorneys did not enter an appearance for more than six months after it was served with the Complaint, and two months after it was served with the MDJ.

15.   Defendant's failure to respond is not "excusable neglect" in this instance; it appears Defendant simply ignored its obligations to this Court without justification.

**Defendant is not entitled to relief  under Rule 60(b)(5).**

16.   In the alternative, Defendant asks the Court for relief under Rule 60(b)(5).[40]  Defendant asserts that relief is warranted because it "satisfied" the

---

[38] Dkt. 5 ("[Defendant] is in the process of retaining local representation . . . .").

[39] Dkt. 8 (Certificate of Service).

[40] Mot. ¶¶ 51–54.

– 8 –

Court's order by producing "all responsive documents in its possession" or informing Plaintiff that they do not exist.[41] Therefore, Defendant reasons, it would be "inequitable and a manifest injustice" to continue enforcing the Order and shifting the fees Plaintiff seeks under these changed circumstances.[42]

17. Plaintiff disputes Defendant's reasoning. Plaintiff counters that Defendant will not suffer any injustice, and the facts it relies on in the Motion are its own "self-serving assurances."[43]

18. "Relief from an order is available under subsection (b)(5) 'only where the judgment, if permitted to stand, will cause a manifest injustice to the moving party.'"[44] Seeking relief on the grounds that the judgment has been satisfied is very rare.[45] Defendant has not demonstrated that they satisfied the Order nor that there is any manifest injustice here.

19. To the contrary, Defendant is contesting this Court's typical practice in the case of a default: ordering Defendant to produce the records in

---

[41] Mot. ¶ 51.

[42] *Id.* ¶¶ 53–56.

[43] *See* Dkt. 21 ¶¶ 24–26.

[44] *High River Ltd. P'rship v. Forest Labs., Inc.*, 2013 WL 492555, at * 6 (Del. Ch. Feb. 5, 2013) (quoting *CEDE & Co. and Cinerama, Inc. v. Technicolor, Inc.*, 1994 WL 1753202, at *1 (Del. Ch. Dec. 6, 1994)).

[45] *See* 11 *Wright & Miller Fed. Prac. & Proc.* § 2863 (3d ed. 2025) (collecting cases).

Plaintiff's demand.[46] There is no "manifest injustice" here because this was a foreseeable outcome if Defendant had not ignored the process, and became a probable result once Defendant was served with the MDJ.

20. Accordingly, the Motion is also denied under Rule 60(b)(5).

**Plaintiff's Fee Request is Excessive.**

21. The Court's June 6 order awarded Plaintiff his attorney fees, costs and expenses incurred in this action, and asked Plaintiff's counsel to submit affidavits to "establish the amount requested."[47] The Rule 88 Affidavit seeks $262,289.75 in fees and costs.[48] Counsel broadly groups its time entries into three categories:

1. Discovery and Investigation: Research, analyze and draft Section 220 Demand; analyze Defendant's limited document production. 57 hours.

2. Pleadings, Motions and Orders: Research, drafting, filing and service of pleadings, motions and proposed orders, including those related to the Complaint, the Motion for Default, and the Affidavit per Court of Chancery Rule 88. 165 hours.

3. Communications, Research, Analysis, and Strategy: Communications with opposing counsel and court; communications with client;

[46] *E.g.*, *Vays. LLC v. Imusti, Inc.*, 2025 WL 1233081, at *1 (Del. Ch. Apr. 30, 2025); *Barbey v. Cerego, Inc.*, 2022 WL 1117236, at *1 (Del. Ch. Apr. 13, 2022); *Yarbo v. Calmare Therapeutics Inc.*, 2017 WL 5133330, at *1 (Del. Ch. Nov. 3, 2017).

[47] Dkt. 10 ¶¶ 4–5.

[48] Dkt. 17, Ex. A.

and related research, analysis[,] and strategy.
71.3 hours.[49]

22. "Delaware law dictates that, in fee shifting cases, a judge determines whether the fees requested are reasonable."[50] In assessing reasonableness, "[t]he Court has broad discretion in determining the amount of fees and expenses to award."[51]

23. To evaluate reasonableness, the Court considers the factors set forth in Rule 1.5(a) of the Delaware Lawyers' Rules of Professional Conduct.[52] Relevant to the present application are "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly[,]"[53] "(4) the amount involved and the results obtained[,]"[54] and "(5) the time limitations imposed by the client or by the circumstances[.]"[55]

---

[49] Dkt. 17, Ex. A.

[50] *Bruckel v. TAUC Hldgs., LLC*, 2023 WL 4583575, at *17 (Del. Ch. July 17, 2023) (quoting *Mahani v. Edix Media Gp., Inc.*, 935 A.2d 242, 245 (Del. 2007)).

[51] *Id.* (quoting *Black v. Staffieri*, 2014 WL 814122, at *4 (Del. Feb. 27, 2014) (TABLE)).

[52] *See Mahani*, 935 A.2d at 245–46 (citing *All Pro Maids, Inc. v. Layton*, 2004 WL 1878784, at *1 (Del. Ch. Sept. 18, 2020)); Del. Lawyers' R. Prof'l Conduct 1.5.

[53] Del. Lawyers' R. Prof'l Conduct 1.5(a)(1).

[54] *Id.* at (a)(4).

[55] *Id.* at (a)(5).

24. Further, while the Court need not "examine individually each time entry and disbursement,"[56] the Court should consider "whether the number of hours devoted to litigation was "excessive, redundant, duplicative or otherwise unnecessary."[57]

25. I find that the 293 hours devoted to a default judgment are clearly excessive. The time, novelty, and difficulty involved, and skill required to succeed on a default judgment is minimal. Plaintiff won judgment from a motion with four paragraphs of legal argument,[58] attaching email correspondence and previously drafted court filings,[59] and a four-page proposed order.[60] Nearly 300 hours of work to produce these material filings is, in my view, excessive.

26. I decline to shift fees for actions that Plaintiff's counsel would have taken if Defendant litigated this action. That includes all services rendered drafting the Demand, preparing and filing the Complaint and

---

[56] *Danenberg v. Fitracks, Inc.*, 58 A.3d 991, 997 (Del. Ch. 2012) (citing *Aveta Inc. v. Bengoa*, 2010 WL 3221823, at *6 (Del. Ch. Aug. 13, 2010)).

[57] *Mahani*, 935 A.2d at 247–48 (quoting *All Pro Maids*, 2004 WL 3029869, at *5).

[58] *See* Dkt. 8 ¶¶ 17–20.

[59] *Id.* at Exs. A–B.

[60] *Id.* at [Proposed] Order Granting Pl.'s Mot. for Entry of Default J.

reviewing Defendant's interim document productions.  Accordingly, I deny Plaintiff's requests for attorney fees in category 1.

27.    As to the remaining categories, the Rule 88 Affidavit groups fees and expenses by the month they were incurred, and attributes them to each timekeeper.[61]  It is unclear what work counsel performed, and how it related to the matter before me.

28.    Plaintiff's counsel must submit additional information from which the Court may assess each task and see that it related to the default judgment, see who performed the task and understand that person's title and billing rate.[62]    Plaintiff's supplemental filings must be submitted by November 13 at 5:00 p.m., ET.

/s/ *Danielle Gibbs*
Magistrate in Chancery

---

[61] *See generally*, Dkt. 17, Ex. A.

[62] *See Bruckel*, 2023 WL 458375, at *17 ("In assessing the reasonableness of Plaintiff's requested fees, '[t]he Court of Chancery has discretion in determining the level of submission required.'") (quoting *Fitracks*, 58 A.3d at 995).